UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER WARBURTON,

                                    Plaintiff,                        14-cv-9170 (JPO)

                    - against -                                      **Original Filed By ECF**

JOHN JAY COLLEGE OF CRIMINAL JUSTICE,

                                    Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendant*
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

WILLIAM J. TAYLOR, JR.
Assistant Attorney General
      *Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF ALLEGED FACTS............................................................................. 2

ARGUMENT ...................................................................................................................... 5

    POINT I -- THE AMENDED COMPLAINT SHOULD BE DISMISSED
               IN ITS ENTIRETY BECAUSE, AS A STATE ENTITY,
               CUNY IS NOT SUBJECT TO SUIT UNDER § 1983 OR § 1985 ..................... 5

      A.  CUNY Is Not a "Person" Amenable to Suit under § 1983 or § 1985 ..........................6

      B.  Plaintiff's Claims Also Are Barred on Sovereign Immunity Grounds .........................7

    POINT II -- THE AMENDED COMPLAINT SHOULD BE
                 DISMISSED ON MULTIPLE ADDITIONAL GROUNDS............................. 12

      A.  Plaintiff's § 1983 and § 1985 Claims Are Barred by Collateral Estoppel .............. 12

      B.  No Claim for Retaliation Exists Under the Equal Protection Clause....................... 14

      C.  Plaintiff Has Failed to State a Plausible
          Claim of Race-Based Employment Discrimination.................................................... 15

      D.  Plaintiff Has Failed to State a Plausible Retaliation Claim ..................................... 18

      E.  Plaintiff's § 1985 Claims Are Also Precluded for Failure to Allege
          a Conspiracy and Under the Intracorporate Conspiracy Doctrine ........................... 20

CONCLUSION................................................................................................................. 21

i

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alden* v. *Maine*,
    527 U.S. 706 (1999).................................................................................................... 7-8

*Allen* v. *N.Y.C. Dep't of Envt'l Prot.*,
    --- F. Supp. 3d ----, No. 13-CV-203 (KMK), 2014 WL 5011096 (S.D.N.Y. Sept. 30,
    2014) ................................................................................................................................ 18-19

*Allessi* v. *N.Y. State Dep't of Corr.& Cmty. Supervision*,
    16 F. Supp. 3d 221, 227-28 (W.D.N.Y. 2014)........................................................17

*Alston* v. *State*,
    97 N.Y.2d 159 (2001) ..............................................................................................7, 11

*Bergemann* v. *R.I. Dep't of Envt'l Mgmt.*,
    665 F.3d 336 (1st Cir. 2011).................................................................................. 9-10

*Bernheim* v. *Litt*,
    79 F.3d 318 (2d Cir. 1996).........................................................................................14

*Bivens* v. *Schrior*,
    No. 12-CV-2915 (CBA)(LB), 2012 WL 2872399 (E.D.N.Y. July 10, 2012) ........................20

*Brown* v. *State*,
    89 N.Y.2d 172 (1996) ...............................................................................................11

*Burrell v. City Univ. of N.Y.*,
    995 F. Supp. 398 (S.D.N.Y. 1998).........................................................................21

*Butts* v. *N.Y.C. Dep't of Hous. Pres. & Dev.*,
    No. 00-CV-6307 (KMK), 2007 WL 259937 (S.D.N.Y. Jan. 29, 2007), *aff'd*, 307 F.
    App'x 596 (2d Cir. 2009) ........................................................................................15

*Chick* v. *Cnty. of Suffolk*,
    546 F. App'x 58 (2d Cir. 2013) ..............................................................................15

*City of Newport* v. *Fact Concerts, Inc.*,
    453 U.S. 247 (1981)....................................................................................................7

*Clarke* v. *InterContinental Hotels Grp., PLC*,
    No. 12 Civ. 2671 (JPO), 2013 WL 2358596 (S.D.N.Y. May 30, 2013) ................18

ii

*Clissuras* v. *City Univ. of N.Y.*,
  359 F.3d 79 (2d Cir. 2004)........................................................................ 1, 6-7

*Coniff* v. *Vermont*,
  No. 2:10-cv-32, 2013 WL 5429428 (D. Vt. Sept. 30, 2013) ........................... 7, 9-10

*DeCintio* v. *Westchester Cnty. Med. Ctr.*,
  821 F.2d 111 (2d Cir. 1987)........................................................................13

*Delgado* v. *Triborough Bridge & Tunnel Auth.*,
  485 F. Supp. 2d 453 (S.D.N.Y. 2007)............................................................19

*Ding* v. *Bendo*,
  No. 03 CV 1237, 2006 WL 752824 (E.D.N.Y. Mar. 23, 2006) ..............................6

*Doe* v. *Cnty. of Centre, Pa.*,
  242 F.3d 437 (3d Cir. 2001)..........................................................................7

*EEOC* v. *Port Auth. of N.Y. & N.J.*,
  768 F.3d 247 (2d Cir. 2014).........................................................................16

*Emmons* v. *City Univ. of N.Y.*,
  715 F. Supp. 2d 394 (E.D.N.Y. 2010) ..............................................................7

*Fed. Maritime Comm'n* v. *S.C. State Ports Auth.*,
  535 U.S. 743 (2002).....................................................................................8

*Gaddy* v. *Waterfront Comm'n*,
  No. 13 Civ. 3322 (AT)(HBP), 2014 WL 4739890 (S.D.N.Y. Sept. 19, 2014).......................17

*Ghadersohi* v. *Health Research, Inc.*,
  No. 09-CV-689S, 2011 WL 4498758 (W.D.N.Y. Sept. 27, 2011)......................................9-11

*Giscombe* v. *N.Y.C. Dep't of Educ.*,
  --- F. Supp. 2d ----, No. 12 Civ. 464 (AT), 2014 WL 3974582 (S.D.N.Y. Aug. 12,
  2014) .....................................................................................................15

*Gross* v. *New York*,
  428 F. App'x 52 (2d Cir. 2011) .................................................................. 10-11

*Hagan* v. *City of New York*,
  --- F. Supp. 2d ----, No. 13-cv-1108 (JPO), 2014 WL 4058067 (S.D.N.Y. Aug. 15,
  2014) .....................................................................................................14

*Haywood* v. *Drown*,
  556 U.S. 729 (2009).....................................................................................11

*Idaho* v. *Coeur d'Alene Tribe of Idaho*,
521 U.S. 261 (1997).................................................................8

*In re Methyl Tertiary Butyl Prods. Lia. Litig.*,
488 F.3d 112 (2d Cir. 2007)....................................................8

*Jattan* v. *Queens Coll. of the City Univ. of N.Y.*,
64 A.D.3d 540 (2d Dep't 2009)..........................................7-8

*Johnson* v. *Cnty. of Nassau*,
411 F. Supp. 2d 171 (E.D.N.Y. 2006) ..........................4, 13-14

*Komlosi* v. *N.Y. State Office of Mental Retardation & Developmental Disabilities*,
64 F.3d 810 (2d Cir. 1995).......................................................6

*Kosakow* v. *New Rochelle Radiology Assocs., P.C.*,
274 F.3d 706 (2d Cir. 2001).............................................13-14

*Lapides* v. *Bd. of Regents of Univ. Sys. of Ga.*,
535 U.S. 613 (2002)...........................................................8-10

*Lizarraga* v. *Central Parking, Inc. -- Waldorf Astoria Hotel*,
No. 13 Civ. 4703 (JPO), 2014 WL 245 3303 (S.D.N.Y. June 2, 2014) ...................................5

*Lucas* v. *Meier*,
No. 11 Civ. 0872 (ER), 2013 WL 1309622 (S.D.N.Y. Mar. 30, 2013)...................................20

*Macer* v. *Bertucci's Corp.*,
No. 13-CV-2994 (JFB)(ARL), 2013 WL 6235607 (E.D.N.Y. Dec. 3, 2013) ........................13

*Manolov* v. *Borough of Manhattan Cmty. Coll.*,
952 F. Supp. 2d 522 (S.D.N.Y. 2013)..............................16-17

*Martinez* v. *City Univ. of N.Y.*,
No. 07 Civ. 6453 (GBD), 2010 WL 987029 (S.D.N.Y. Mar. 12, 2010) ................................10

*Monclova* v. *City of New York*,
CV-05-3164 (DGT), 2008 WL 822117 (E.D.N.Y. Mar. 26, 2008)........................................20

*Morales* v. *New York*,
22 F. Supp. 3d 256 (S.D.N.Y. 2014).......................................6

*Musaji* v. *Banco do Brazil*,
No. 10 Civ. 8541 (RJH), 2011 WL 2507712 (S.D.N.Y. June 21, 2011) ...................................4

*O'Diah* v. *New York City*,
No. 02 Civ. 274 (DLC), 2002 WL 1941179 (S.D.N.Y. Aug. 21, 2002)....................................6

iv

*Patane* v. *Clark*,
  508 F.3d 106 (2d Cir. 2007)........................................................................ 15-16

*Patterson* v. *Cnty. of Oneida*,
  375 F.3d 206 (2d Cir. 2004).............................................................................15

*Pearson* v. *Bd. of Educ.*,
  499 F. Supp. 2d 575 (S.D.N.Y. 2007)...............................................................18

*Planck* v. *SUNY Bd. of Trustees*,
  18 A.D.3d 988 (3d Dep't 2005)....................................................................8, 10

*Pollner* v. *John Jay Coll. of Crim. Justice/CUNY*,
  No. 12-cv-5978 (CM)(RLE), 2013 WL 3833031 (S.D.N.Y. July 22, 2013)....................1, 5, 7

*Reyes* v. *City Univ. of N.Y.*,
  06 Civ. 3639 (CM), 2007 WL 2186961 (S.D.N.Y. Jul. 26, 2007) .........................................19

*Reynolds* v. *Barrett*,
  685 F.3d 193 (2d Cir. 2012).......................................................................... 17-18

*Rhee-Karn* v. *Burnett*,
  No. 13 Civ. 6132 (JPO), 2014 WL 4494126 (S.D.N.Y. Sept. 12, 2014).................................2

*Rister* v. *City Univ. of N.Y.*,
  20 Misc. 3d 195 (Ct. Cl. 2008) .........................................................................11

*Rolle* v. *Educ. Bus Transp., Inc.*,
  No. 11-cv-3855 (SJF) (AKT), 2013 WL 783026 (E.D.N.Y. Feb. 12, 2013), *adopted by* 2013 WL 783011 (E.D.N.Y. Feb. 27, 2013).......................................................16

*Sanders* v. *Grenadier Realty*,
  367 F. App'x 173 (2d Cir. 2010) .................................................................. 15-17

*Sank* v. *City Univ. of N.Y.*,
  No. 10 Civ. 4975, 2011 WL 5120668 (S.D.N.Y. Oct. 28, 2011) ...................................5, 8, 10

*Shao* v. *City Univ. of N.Y.*,
  No. 12-cv-1566 (RJS), 2014 WL 5038389 (S.D.N.Y. Sept. 30, 2014) ........................... 14-15

*Sharapata* v. *Town of Islip*,
  56 N.Y.2d 332 (1982) .....................................................................................11

*Sherman* v. *Harris*,
  No. 11-CV-4385 (DLI) (JMA), 2012 WL 4369766 (E.D.N.Y. Sept. 24, 2012) ......................8

*Simpson* v. *Uniondale Union Free Sch. Dist.*,
  702 F. Supp. 2d 122 (E.D.N.Y. 2010) ...............................................................18

*Slattery* v. *Swiss Reinsurance Am. Corp.*,
　　248 F.3d 87 (2d Cir. 2001)................................................................................20

*Stewart* v. *North Carolina*,
　　393 F.3d 484 (4th Cir. 2005) ......................................................................... 9-11

*Sullivan* v. *N.Y.C. Dep't of Investigation*,
　　No. 12 Civ. 2564 (TPG), 2014 WL 1244666 (S.D.N.Y. Mar. 26, 2014) ......................... 12-13

*Thompson* v. *New York City*,
　　No. 12 Civ. 8034 (PAE), 2013 WL 6409326 (S.D.N.Y. Dec. 9, 2013) .................................17

*Tolliver* v. *Wilson*,
　　No. 99 Civ. 9555 (JGK), 2000 WL 1154311 (S.D.N.Y. Aug. 14, 2000) ................................6

*Vossbrinck* v. *Accredited Home Lenders, Inc.*,
　　--- F.3d ----, Nos. 12-3647-cv, 12-4597-cv, 2014 WL 6863669 (2d Cir. Dec. 8, 2014) .........10

*Watters* v. *Wash. Metro. Area Transit Auth.*,
　　295 F.3d 36 (D.C. Cir. 2002) ...........................................................................9

*Webb* v. *Goord*,
　　340 F.3d 105 (2d Cir. 2003).............................................................................20

*Will* v. *Mich. Dep't of State Police*,
　　491 U.S. 58 (1989)..........................................................................................6-7

*Williams* v. *Time Warner Inc.*,
　　440 F. App'x 7 (2d Cir. 2011) .........................................................................19

*Wimmer* v. *Suffolk Cnty. Police Dep't*,
　　176 F.3d 125 (2d Cir. 1999)..............................................................................19

## STATUTES

42 U.S.C. § 1983......................................................................................................6

42 U.S.C. § 1985......................................................................................................6

Title VII of the Civil Rights Act of 1964, 42 U.S.C.
　　§ 2000e *et seq.* ("Title VII") ...........................................................................5

N.Y. Educ. Law §§ 6202-6203 .....................................................................................1

Defendant The City University of New York (sued herein as John Jay College of Criminal Justice) ("CUNY" or "Defendant")[1], by its attorney, Eric T. Schneiderman, Attorney General of the State of New York, respectfully submits this memorandum of law in support of its motion, brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint in this action, dated November 25, 2014, and each and every cause of action and request for relief asserted therein in its entirety, with prejudice.

## PRELIMINARY STATEMENT

Plaintiff Christopher Warburton ("Plaintiff"), an African-American former Assistant Professor of Economics at John Jay College, brings this action under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, alleging that, during the course of his employment at John Jay, he was unlawfully discriminated against on the basis of his race and unlawfully retaliated against for complaining of race discrimination.

Plaintiff's claims are without merit, and should be dismissed as a matter of law, for several reasons:

*First*, the Amended Complaint should be dismissed in its entirety because CUNY is not a "person" subject to suit under either § 1983 or § 1985.  *See infra* Point I.A.

*Second*, Plaintiff's claims against CUNY are also barred by state sovereign immunity. *See infra* Point I.B.

---

[1] The only proper institutional defendant in this action is CUNY.  CUNY is a distinct corporate body. N.Y. Educ. Law § 6203.  John Jay College of Criminal Justice ("John Jay College" or "John Jay" or the "College") is a senior college in the CUNY system which is not a legally cognizable entity separate and apart from CUNY.  *Id.* § 6202(2) and (5); *Clissuras* v. *City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam); *see, e.g., Pollner* v. *John Jay Coll. of Crim. Justice/CUNY*, No. 12-cv-5978 (CM)(RLE), 2013 WL 3833031, at *1 n.1 (S.D.N.Y. July 22, 2013) ("Courts in this district require suits against John Jay College to name CUNY as the defendant.").  Any reference herein to John Jay College or John Jay or the College is thus also a reference to CUNY.

*Third*, given the prior state administrative investigation and findings with respect to Plaintiff's discrimination and retaliation claims, dismissal of the action is warranted here on collateral estoppel grounds.  *See infra* Point II.A.

*Fourth*, Plaintiff's § 1983 and § 1985 retaliation claims also should be dismissed because no actionable claim for retaliation pursuant to these statutes exists for an alleged violation of the Equal Protection Clause.  *See infra* Point II.B.

*Fifth*, Plaintiff has failed to state a plausible claim of race-based employment discrimination.  *See infra* Point II.C.

*Sixth*, he has not stated a plausible retaliation claim either.  *See infra* Point II.D.

*Finally*, Plaintiff's § 1985 claims also fail because he has not alleged the existence of a conspiracy, and because such claims are precluded here by the intracorporate conspiracy doctrine.  *See infra* Point II.E.

For all these reasons, discussed in detail below, CUNY's motion should be granted, and the Amended Complaint should be dismissed with prejudice.

## STATEMENT OF ALLEGED FACTS[2]

Plaintiff is an African-American former Assistant Professor of Economics at John Jay College.  (Am. Cplt. ¶¶ 1, 6.)  Plaintiff served as an Assistant Professor at John Jay from 2006 until 2013.  (*Id.* ¶¶ 6, 16-19; Taylor Decl. Ex. D (Nov. 20, 2012 Letter from Jeremy Travis,

---

[2]  This statement is based on the allegations in the original Complaint and the Amended Complaint ("Cplt." and "Am. Cplt.," copies of which are attached as Exhibits A and B, respectively, to the accompanying Declaration of William J. Taylor, Jr. ("Taylor Decl.")), as well as other documents, noted below, that the Court may properly consider on this motion to dismiss.  *See, e.g.*, *Rhee-Karn* v. *Burnett*, No. 13 Civ. 6132 (JPO), 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014) (noting that, in ruling on a Rule 12(b)(6) motion, a court may consider "the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken").

President of John Jay, to Plaintiff).)[3]

In a letter dated November 20, 2012, the President of John Jay College, Jeremy Travis ("President Travis"), in accord with the recommendation of the college-wide Faculty Personnel Committee, informed Plaintiff that John Jay had decided "not to reappoint [him] to the faculty in the Department of Economics at John Jay College of Criminal Justice" when his current appointment expired on August 31, 2013.  (Am. Cplt. ¶ 19; Taylor Decl. Ex. D; *id.* Ex. C (Nov. 15, 2012 Letter from Jane Bowers, Provost and Senior Vice President for Academic Affairs of John Jay, to Plaintiff).)  Plaintiff's appeal of this decision was denied by the Faculty Personnel Committee, and President Travis concurred.  (Taylor Decl. Ex. E (Dec. 26, 2012 Letter from Jane Bowers, Provost and Senior Vice President for Academic Affairs of John Jay, to Plaintiff).) Plaintiff then appealed directly to President Travis, and that appeal was also denied.  (*Id.* Ex. F (Feb. 1, 2013 Letter from President Travis to Plaintiff).)

On February 28, 2013, upon Plaintiff's request, President Travis issued a letter setting forth the reasons for his decision.  (Taylor Decl. Ex. G (Feb. 28, 2013 Letter from President Travis to Plaintiff); *see* Am. Cplt. ¶ 22.)  As President Travis stated, pursuant to his duties as President of John Jay, he "made an independent review of [Plaintiff's] entire academic record and based on [his] academic judgment decided to deny [Plaintiff's] appeal."  (Taylor Decl. Ex. G at 1.)  In particular, as President Travis explained and detailed in the letter, his decision "rest[ed] on two concerns, each of which independently constitutes sufficient reason for denying

---

[3] Plaintiff alleges that he was first hired an Assistant Professor in the Economics Department at John Jay. (Am. Cplt. ¶ 6.)  But that is plainly incorrect, as John Jay did not have an Economics Department at that time.  (Taylor Decl. Ex. H (John Jay Undergraduate Bulletin, 2005-07); *id.* Ex. I (John Jay Undergraduate Bulletin, 2007-08).)  Instead, Plaintiff was initially hired, for the 2006-2007 academic year, as an Assistant Professor in John Jay's Department of Public Management.  (*Id.* Ex. I at 202, 226; Am. Cplt. ¶ 6.)  He was then transferred to the newly created Economics Department, as an Assistant Professor, during the 2008-2009 academic year.  (Taylor Decl. Ex. J (John Jay Undergraduate Bulletin, 2008-09) at 201, 229.)

[Plaintiff's] reappointment with tenure: lack of collegiality toward [his] colleagues in [his] department and inadequate scholarship."  (*Id.* at 1-3; *see* Am. Cplt. ¶ 22.)

On November 21, 2013, Plaintiff filed a verified complaint with the New York State Division of Human Rights (the "SDHR"), which was dual-filed with the U.S. Equal Employment Opportunity Commission (the "EEOC"), alleging that CUNY had discriminated against him on the basis of his race and his national origin and had retaliated against him for complaining about purported "employment improprieties."  (Taylor Decl. Ex. K (SDHR Complaint).)[4]  On May 21, 2014, after investigating the charges, the SDHR dismissed the complaint, determining that there was no probable cause to believe that CUNY has engaged or is engaging in unlawful discrimination or retaliation against Plaintiff.  (Taylor Decl. Ex. L (SDHR Determination and Order After Investigation).)  On June 19, 2014, the EEOC issued its own Dismissal and Notice of Rights with respect to Plaintiff's discrimination charge, adopting the findings of the SDHR. (*Id.* Ex. M (EEOC Dismissal and Notice of Rights).)

On October 14, 2014, Plaintiff then commenced the present action in the Supreme Court of the State of New York, New York County, asserting claims against CUNY under 42 U.S.C. § 1981 for both race discrimination and retaliation.  (Cplt. ¶¶ 32-34.)  On November 18, 2014, CUNY timely removed the action to this Court.  (Ex. A (Notice of Removal with Summons and Complaint).)  A week later, on November 25, 2014, Plaintiff filed the Amended Complaint -- which is identical to the original Complaint but for one notable exception.  Plaintiff no longer brings his claims pursuant to 42 U.S.C. § 1981 (which has been dropped as a cause of action),

---

[4] *See, e.g.*, *Musaji* v. *Banco do Brazil*, No. 10 Civ. 8541 (RJH), 2011 WL 2507712, at *4 n.4 (S.D.N.Y. June 21, 2011) (noting that "with respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents [on a motion to dismiss] because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims" (internal quotation marks omitted)); *Johnson* v. *Cnty. of Nassau*, 411 F. Supp. 2d 171, 177-78 (E.D.N.Y. 2006) (considering "the entire []SDHR investigatory file pertaining to [p]laintiff's case" on Rule 12(b)(6) motion to dismiss).

but instead alleges violations by CUNY of "the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 and 42 U.S.C. § 1985." (Am. Cplt. ¶¶ 32-34.)[5]  As in the original Complaint, to remedy this alleged race discrimination and retaliation by CUNY, Plaintiff seeks an unspecified amount of compensatory damages, punitive damages, "promotion and reinstatement of tenure status," and attorneys' fees and costs. (Am. Cplt. at 5.)

CUNY now moves to dismiss the Amended Complaint for the reasons discussed below.

## ARGUMENT

### POINT I

**THE AMENDED COMPLAINT SHOULD BE DISMISSED
IN ITS ENTIRETY BECAUSE, AS A STATE ENTITY,
CUNY IS NOT SUBJECT TO SUIT UNDER § 1983 OR § 1985**

Plaintiff's only claims in this action are brought against CUNY under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  (Am. Cplt. ¶ 34.)[6]  As an "arm of the state of New York," *Pollner*, 2013 WL 3833031, at *3, however, CUNY is not subject to suit under either statute -- both (a) because it is not a "person" amenable to suit under § 1983 or § 1985 and (b) on sovereign immunity grounds.  For each of these independent reasons, dismissal of the Amended Complaint, in its entirety, is fully warranted.

---

[5] Notably, Plaintiff does not assert a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Nor, given the almost four months between the right-to-sue letter and Plaintiff's initiation of the action, would such a claim be timely here.  *See, e.g., Lizarraga* v. *Central Parking, Inc. -- Waldorf Astoria Hotel*, No. 13 Civ. 4703 (JPO), 2014 WL 2453303, at *2 (S.D.N.Y. June 2, 2014) ("To be timely, a Title VII complaint must be filed within 90 days of receipt by the claimant of a right-to-sue letter from the EEOC.") (citing 42 U.S.C. § 2000e-5(f)(1)).

[6] To the extent Plaintiff may be attempting to assert a claim here directly under the Fourteenth Amendment, and not through § 1983 or § 1985, he is precluded from doing so.  *See, e.g., Sank* v. *City Univ. of N.Y.*, No. 10 Civ. 4975, 2011 WL 5120668, at *6 (S.D.N.Y. Oct. 28, 2011) ("Because 42 U.S.C. § 1983 . . . provides a remedy for alleged constitutional violations, [plaintiff] cannot base claims directly on the First, Fourth and Fourteenth Amendments.").

A.    CUNY Is Not a "Person" Amenable to Suit under § 1983 or § 1985

All of Plaintiff's claims in the Amended Complaint -- which, as noted, are asserted

against CUNY solely pursuant to § 1983 and § 1985 -- are precluded, and should be dismissed

with prejudice, because CUNY is not a "person" amenable to suit under either of those statutes.

The analysis here is not complicated.  By their terms, both § 1983 and § 1985 apply, and

attach liability, only to "persons."  42 U.S.C. § 1983; *id.* § 1985.  As the Supreme Court has held,

"[n]either a State nor its officials acting in their official capacities are 'persons' under § 1983."

*Will* v. *Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  And this is equally true with respect

to "governmental entities that are considered 'arms of the State' for Eleventh Amendment

purposes."  *Id.* at 70; *see, e.g.*, *Komlosi* v. *N.Y. State Office of Mental Retardation &*

*Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995) ("It is now settled that a state cannot

be sued under § 1983, and that this rule applies to States or governmental entities that are

considered 'arms of the state' for Eleventh Amendment purposes." (citation and internal

quotation marks omitted)); *Morales* v. *New York*, 22 F. Supp. 3d 256, 273 (S.D.N.Y. 2014).

"Similarly, under § 1985, a state and its agencies are not 'persons' and cannot be sued."  *Tolliver*

v. *Wilson*, No. 99 Civ. 9555 (JGK), 2000 WL 1154311, at *3 (S.D.N.Y. Aug. 14, 2000); *see,*

*e.g.*, *Ding* v. *Bendo*, No. 03 CV 1237, 2006 WL 752824, at *4 n.2 (E.D.N.Y. Mar. 23, 2006)

("[I]t is well-settled that a State and its instrumentalities are not 'persons' subject to suit under §

1983, and there is no reason to suspect that Congress intended the term 'persons' to take on a

different meaning in § 1985.") (citation omitted); *O'Diah* v. *New York City*, No. 02 Civ. 274

(DLC), 2002 WL 1941179, at *6 (S.D.N.Y. Aug. 21, 2002).

As the Second Circuit has held, CUNY and its senior colleges, including John Jay

College, are "arms of the state" for Eleventh Amendment purposes.  *Clissuras*, 359 F.3d at 81 &

n.2; *see, e.g.*, *Pollner*, 2013 WL 3833031, at *3 (holding, in accord with other courts in this

Circuit, that John Jay is an "arm of the State of New York" for Eleventh Amendment purposes).

Thus, under this settled authority, CUNY is plainly not a "person" subject to suit, for any form of

relief, under § 1983 or § 1985.  *Will*, 491 U.S. at 70-71; *see, e.g.*, *Emmons* v. *City Univ. of N.Y.*,

715 F. Supp. 2d 394, 414 (E.D.N.Y. 2010) (holding that CUNY is not a "person" subject to suit

under § 1983 or § 1985).[7]

Accordingly, the Amended Complaint fails to state any valid cause of action here.  On

this basis alone, it should be dismissed by the Court, in its entirety, with prejudice.

### B.    Plaintiff's Claims Also Are Barred on Sovereign Immunity Grounds

Plaintiff's claims against CUNY also are barred here by sovereign immunity, and thus

should be dismissed as a matter of law for that reason as well.

State sovereign immunity includes not only immunity from suit in federal court (which is

recognized by the Eleventh Amendment), but a general sovereign immunity against all litigation.

*See Alden* v. *Maine*, 527 U.S. 706, 712-13, 728-30 (1999); *Alston* v. *State*, 97 N.Y.2d 159, 162

(2001); *see also, e.g.*, *Coniff* v. *Vermont*, No. 2:10-cv-32, 2013 WL 5429428, at *4 (D. Vt. Sept.

30, 2013) ("Thus, there are really two discrete types of sovereign immunity: Eleventh

Amendment immunity from suit in federal court, and a general sovereign immunity against all

suits.").  Here, as noted, *see supra* Point I.A, CUNY is an "arm of the State of New York"

entitled to state sovereign immunity.  *Pollner*, 2013 WL 3833031, at *3; *see Clissuras*, 359 F.3d

at 81 & n.2; *Jattan* v. *Queens Coll. of the City Univ. of N.Y.*, 64 A.D.3d 540, 541-42 (2d Dep't

---

[7] Even if CUNY were a "person," it would still not be subject to Plaintiff's alleged demand for punitive damages (*see* Am. Cplt. at 5) for the additional reason that state and local government entities are immune from punitive damages under §§ 1983 and 1985.  *See City of Newport* v. *Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Doe* v. *Cnty. of Centre, Pa.*, 242 F.3d 437, 455 (3d Cir. 2001) (recognizing that *City of Newport* "stands for the proposition that municipalities, and more broadly, state and local government entities, are immune from punitive damages" under § 1983); *see also infra* note 10.

2009).  With respect to the § 1983 and § 1985 claims Plaintiff asserts in this action, New York has not waived that immunity in federal court, *see, e.g.*, *Sank*, 2011 WL 5120668, at *6; *Sherman* v. *Harris*, No. 11-CV-4385 (DLI)(JMA), 2012 WL 4369766, at *5 (E.D.N.Y. Sept. 24, 2012), or in the New York State Supreme Court where suit was initiated, *see, e.g.*, *Planck* v. *SUNY Bd. of Trustees*, 18 A.D.3d 988, 989 n.1, 991 (3d Dep't 2005).  Nor has Congress abrogated such immunity.  *See, e.g.*, *Sank*, 2011 WL 5120668, at *6; *Sherman*, 2012 WL 4369766, at *5.  Accordingly, the Amended Complaint should be dismissed on this basis as well.

CUNY's removal of Plaintiff's action to federal court does not affect the sovereign immunity bar here.  "[S]tate sovereign immunity is broader than, and independent of, the immunity provided by the Eleventh Amendment."  *In re Methyl Tertiary Butyl Prods. Lia. Litig.*, 488 F.3d 112, 116 (2d Cir. 2007); *see, e.g.*, *Fed. Maritime Comm'n* v. *S.C. State Ports Auth.*, 535 U.S. 743, 753 (2002) ("[T]he Eleventh Amendment does not define the scope of the States' sovereign immunity; it is but one particular exemplification of that immunity."); *Alden*, 527 U.S. at 728-29 ("[S]overeign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself."); *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997) (noting "the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as evidencing and exemplifying").  Thus, even if CUNY's removal of this action were deemed  a waiver of Eleventh Amendment immunity, *see Lapides* v. *Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002), it is still protected by the broader principle of state sovereign immunity.[8]

---

[8] CUNY does not concede that the removal to federal court constitutes a waiver of Eleventh Amendment immunity here, but it is not necessary to reach that question in this case.  As discussed below, *see infra* pp. 9-10, *Lapides* v. *Board of Regents of the University System of Georgia*, 535 U.S. at 616, 620, in which the Supreme Court found that by removing an action to federal court, the State of Georgia had waived its Eleventh Amendment immunity over certain state law claims as to which it had already waived sovereign immunity in its own courts, involved very different facts from this case.  In addition, the § 1983 and §

States, of course, may waive their sovereign immunity (or Congress may properly abrogate it). But, at least with respect to those claims as to which states have immunity in their own courts, a state's removal of an action to federal court does not amount to such a waiver. *See, e.g.*, *Coniff*, 2013 WL 5429428, at *6-8 (holding, as "[n]umerous circuit courts have found," that "removal does not constitute a waiver of sovereign immunity in cases where the sovereign was immune in both state and federal court"); *Ghadersohi* v. *Health Research, Inc.*, No. 09-CV-689S, 2011 WL 4498758, at *3 (W.D.N.Y. Sept. 27, 2011) (holding that where plaintiff commenced an action "in a court that did not have jurisdiction over [a] claim," the state agency's "removal to another court that also is without jurisdiction can in no way be viewed as a waiver" of sovereign immunity); *accord, e.g.*, *Bergemann* v. *R.I. Dep't of Envt'l Mgmt.*, 665 F.3d 336, 341-43 (1st Cir. 2011); *Stewart*, 393 F.3d at 490; *Watters* v. *Wash. Metro. Area Transit Auth.*, 295 F.3d 36, 42 n.13 (D.C. Cir. 2002).

As the Fourth Circuit has explained, under these circumstances, "by removing the case to federal court and then invoking sovereign immunity," a state "d[oes] not seek to *regain* immunity that it had abandoned previously." *Stewart*, 393 F.3d at 490. "Instead, [it] merely s[eeks] to have the sovereign immunity issue resolved by a federal court rather than a state court." *Id.* Thus, the situation is quite unlike the facts before the Supreme Court in *Lapides*, where Georgia removed an action to federal court and then sought immunity there over a state law claim as to which it had waived its immunity from suit in state court. 535 U.S. at 616. The

---

1985 claims now asserted by Plaintiff were not alleged in the original Complaint filed in state court, which raised only a claim under § 1981. (*Compare* Cplt. ¶¶ 32-34, *with* Am. Cplt. ¶¶ 32-34.) Thus, they are not fairly susceptible to waiver. But, because this action is plainly barred by the broader concept of state sovereign immunity, as well as on the other grounds for dismissal set forth herein, the Court need not reach the narrower Eleventh Amendment immunity question here. *See, e.g.*, *Stewart* v. *North Carolina*, 393 F.3d 484, 490 n.5 (4th Cir. 2005) (holding that North Carolina's removal of action to federal court did not waive its state sovereign immunity, and not deciding the "more narrow" Eleventh Amendment immunity issue) .

Supreme Court held that by removing the action, Georgia had voluntarily invoked federal jurisdiction and thereby had waived its federal-court immunity with respect to that state law claim.  *Id.* at 620; *see Vossbrinck* v. *Accredited Home Lenders, Inc.*, --- F.3d ----, Nos. 12-3647-cv, 12-4597-cv, 2014 WL 6863669, at *3 (2d Cir. Dec. 8, 2014) (per curiam) (noting that "[w]hen a defendant is sued in state court *on a claim appropriately brought in state court*, which the federal court would be powerless to adjudicate, the defendant may not defeat the claim by removing it to federal court and then obtaining its dismissal on the grounds of the federal court's lack of jurisdiction" (emphasis added) (citing *Lapides*, 535 U.S. at 619-20)).  Under the "materially different" scenario where a state is immune from suit in both state and federal court, removing to federal court and asserting sovereign immunity simply does not raise the concerns of "inconsistency, anomaly, and unfairness" at issue in *Lapides*, 535 U.S. at 620.  *Bergemann*, 665 F.3d at 341-43; *see, e.g.*, *Coniff*, 2013 WL 5429428, at *6-8; *Stewart*, 393 F.3d at 489-90.

As noted, *see supra* pp. 7-8, that "materially different" scenario is precisely the situation here.  The claims alleged by Plaintiff were not "appropriately brought in state court." *Vossbrinck*, 2014 WL 6863669, at *3.  On the contrary, CUNY is immune from suit with respect to § 1983 and § 1985 claims (as well as the § 1981 claim originally alleged, *see, e.g.*, *Martinez* v. *City Univ. of N.Y.*, No. 07 Civ. 6453 (GBD), 2010 WL 987029, at *2 (S.D.N.Y. Mar. 12, 2010)) in both state and federal court.  *See, e.g.*, *Sank*, 2011 WL 5120668, at *6; *Planck*, 18 A.D.3d at 989 n.1, 991.  Thus, CUNY's removal of Plaintiff's action to this Court cannot result in a waiver of sovereign immunity either.  *See, e.g.*, *Coniff*, 2013 WL 5429428, at *6-8; *Ghadersohi*, 2011 WL 4498758, at *3.

That New York appears to have waived its immunity with respect to such claims in the New York Court of Claims does nothing to change this analysis.  *See Gross* v. *New York*, 428 F.

App'x 52, 53 (2d Cir. 2011); *Alston*, 97 N.Y.2d at 162-63.[9]  As the one court in this Circuit to consider the question has held, where the Court of Claims has exclusive jurisdiction over a cause of action, a state entity's removal of the action from New York State Supreme Court to federal district court -- *i.e.*, from one "court that did not have jurisdiction over this claim" to "another court that also is without jurisdiction" -- "can in no way be viewed as a waiver" of its sovereign immunity.  *Ghadersohi*, 2011 WL 4498758, at *2-3; *see also, e.g.*, *Stewart*, 393 F.3d at 490 & n.3 (holding that where North Carolina has similarly "vested exclusive jurisdiction" over negligence claims in a separate state body, its removal of an action from a state court without jurisdiction to a federal court did not waive the state's sovereign immunity from suit).

In sum, all of Plaintiff's claims against CUNY are precluded here on state sovereign immunity grounds.  Dismissal of the Amended Complaint for lack of subject matter jurisdiction is thus also fully warranted.[10]

---

[9] It also does nothing to affect the propriety of dismissal here on the independent ground (discussed above, *see supra* Point I.A) that CUNY is not a "person" subject to suit under § 1983 or § 1985.  *See Haywood* v. *Drown*, 556 U.S. 729, 734 n.4 (2009) ("Although the State has waived its sovereign immunity from liability by allowing itself to be sued in the Court of Claims, a plaintiff seeking damages against the State in that court cannot use § 1983 as a vehicle for redress because a State is not a "person" under § 1983."); *Brown* v. *State*, 89 N.Y.2d 172, 176, 185-86 (1996) (holding that the Court of Claims had subject matter jurisdiction over plaintiffs' 42 U.S.C. § 1981 claim against the State of New York, but dismissing the claim because the State is not a "person" under § 1983, which is "the exclusive Federal damages remedy for violation of the rights guaranteed by section 1981," and thus plaintiffs failed to state a cause of action).

[10] Plaintiff's request for punitive damages (*see* Am. Cplt. at 5) also should be stricken because, as a state entity, CUNY is immune from any punitive damages claim.  *See Sharapata* v. *Town of Islip*, 56 N.Y.2d 332, 338 (1982); *see also supra* note 7.  Indeed, even where the State has waived its immunity from suit, it does *not* follow that the State has also waived its immunity from awards of punitive damages.  *See id.* at 334-39 (Court of Claims Act did not waive State's immunity from punitive damages awards); *accord Rister* v. *City Univ. of N.Y.*, 20 Misc. 3d 195, 202 (Ct. Cl. 2008) (punitive damages not available against CUNY in the Court of Claims).

## POINT II

### THE AMENDED COMPLAINT SHOULD BE
### DISMISSED ON MULTIPLE ADDITIONAL GROUNDS

**A.    Plaintiff's § 1983 and § 1985 Claims Are Barred by Collateral Estoppel**

As noted above, *see supra* p. 4, although he fails to mention it in his pleadings, Plaintiff previously filed a discrimination complaint against CUNY, relating to the same factual allegations set forth in the Amended Complaint, with the New York State Division of Human Rights.  (Taylor Decl. Ex. K.)  After a thorough investigation -- including consideration of the parties' written submissions, review of the relevant evidence and related information, and interviews of Plaintiff and other witnesses (*see id.* Ex. L) -- the SDHR determined that there was no probable cause to believe that CUNY has engaged or is engaging in unlawful discrimination against Plaintiff because of his race or unlawful retaliation against him for complaining of race discrimination.  (*Id.* at 1, 5.)

Under similar circumstances, courts have held that a plaintiff's assertion in a subsequent judicial proceeding of § 1983 or § 1985 claims "aris[ing] out of the same set of facts" presented to the SDHR and "premised on defendants' alleged discrimination and retaliation against [plaintiff]" are precluded on collateral estoppel grounds.  *Sullivan* v. *N.Y.C. Dep't of Investigation*, No. 12 Civ. 2564 (TPG), 2014 WL 1244666, at *2-4 (S.D.N.Y. Mar. 26, 2014) (noting that, under *University of Tennessee* v. *Elliot*, 478 U.S. 788, 797-98 (1986), "[u]nless the statute providing the cause of action instructs otherwise, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the state's courts," and holding that, under this rule,  plaintiff's § 1983 employment discrimination and retaliation claims were barred, on a Rule 12(c) motion for judgment on the pleadings, by SDHR's finding that there was no probable cause to believe that defendants had engaged in unlawful discriminatory

practices); *see, e.g.*, *DeCintio* v. *Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 117-18 (2d Cir.

1987) (holding that plaintiff's § 1983 employment discrimination action was precluded where an

earlier determination by the SDHR determined that there was no probable cause to believe that

the plaintiff had been discriminated against, and noting that "[t]he same analysis" would apply to

claims brought under § 1985 and the Fourteenth Amendment).

    As these courts have found, plaintiffs' charges of discrimination brought before the

SDHR were "sufficiently identical" to subsequent § 1983 or § 1985 employment discrimination

claims "for preclusion purposes." *Sullivan*, 2014 WL 1244666, at *4; *see, e.g.*, *DeCintio*, 821

F.2d at 117-18; *Macer* v. *Bertucci's Corp.*, No. 13-CV-2994 (JFB)(ARL), 2013 WL 6235607, at

*5 (E.D.N.Y. Dec. 3, 2013). And, because those plaintiffs did not meet their burden of proving

that they "did not have a full and fair opportunity of litigating the issue" before the SDHR,

dismissal on collateral estoppel grounds was fully warranted. *Sullivan*, 2014 WL 1244666, at

*3-4; *see, e.g.*, *DeCintio*, 821 F.2d at 117-18; *Johnson*, 411 F. Supp. 2d at 180-83. So too here.

    *Kosakow* v. *New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 733-36 (2d Cir.

2001), in which the Second Circuit declined to give preclusive effect to a determination of no

probable cause by the SDHR, is not to the contrary. In both that case and here, to be sure,

plaintiffs were not formally represented by counsel before the SDHR. (*See* Taylor Decl. Exs. K,

L); *Kosakow*, 274 F.3d at 735. But in this case, as Plaintiff admitted in a submission to the

EEOC, he consulted with counsel regarding his alleged discrimination and retaliation claims,

and, while no attorney for Plaintiff ever entered an appearance in the SDHR or the EEOC, such

counsel was "observing the process." (Taylor Decl. Ex. N (EEOC Intake Questionnaire) at 4.)[11]

---

[11] In any event, a plaintiff's *pro se* status before the SDHR is not dispositive of the subsequent preclusion inquiry. *See Macer*, 2013 WL 6235607, at *3, *5-6 (holding that, despite plaintiff's *pro se* status before the SDHR, her race discrimination claims, including claims brought under § 1983, were still precluded by the SDHR's prior finding that defendant did not discriminate against plaintiff).

And, unlike in *Kosakow*, 274 F.3d at 734, the record reflects that Plaintiff here submitted

extensive documentary evidence to the SDHR, that the SDHR conducted interviews of Plaintiff

and other witnesses, and that Plaintiff "was otherwise given a full opportunity to present his case

and rebut evidence submitted by [CUNY]."  *Johnson*, 411 F. Supp. 2d at 182; (*see* Taylor Decl.

Ex. L).

Accordingly, Plaintiff's § 1983 and § 1985 claims in the Amended Complaint are

precluded by collateral estoppel, and thus they should be dismissed for this reason pursuant to

Rule 12(b)(6).

### B.    No Claim for Retaliation Exists Under the Equal Protection Clause

Plaintiff asserts claims in this action, under § 1983 and § 1985, for purported racial

discrimination and retaliation, in alleged violation of the Equal Protection Clause of the

Fourteenth Amendment.  (Am. Cplt. ¶¶ 32-34.)[12]  But, with respect to the retaliation claims, no

such cause of action exists.  As the Second Circuit has made clear, there is no "claim under the

equal protection clause for retaliation following complaints of racial discrimination."  *Bernheim*

v. *Litt*, 79 F.3d 318, 323 (2d Cir. 1996); *see, e.g.*, *Hagan* v. *City of New York*, --- F. Supp. 2d ----,

No. 13-cv-1108 (JPO), 2014 WL 4058067, at *15 (S.D.N.Y. Aug. 15, 2014) (holding that the

Equal  Protection Clause of the Fourteenth Amendment does not confer a cause of action for

retaliation);  *Shao* v. *City Univ. of N.Y.*, No. 12-cv-1566 (RJS), 2014 WL 5038389, at *8

(S.D.N.Y. Sept. 30, 2014) (noting that "the Second Circuit has declined 'to break new

---

[12] While Plaintiff does not specifically reference the Equal Protection Clause in his pleadings, given his
assertions that he was "discriminated against . . . because of his race" and "retaliated against for
complaining of . . . race discrimination," and his specific reference to the Fourteenth Amendment (*id.* ¶¶
4, 32-34), that is the only constitutional provision he could possibly be attempting to rely on here.

constitutional ground' by recognizing a claim for retaliation arising under § 1983").[13]  Thus, for this reason, too, Plaintiff's alleged retaliation claims in the Amended Complaint are subject to dismissal with prejudice.

### C.    Plaintiff Has Failed to State a Plausible Claim of Race-Based Employment Discrimination

Even if they were not precluded for the reasons already discussed, *see supra* Points I & II.A, Plaintiff's § 1983 and § 1985 employment discrimination claims against CUNY also fail because he has not plausibly alleged that he was discriminated against on the basis of his race.

As the Second Circuit has made clear, "[t]he *sine qua non*" of any employment discrimination claim "is that the discrimination must be *because of*" the employee's protected characteristic.  *Patane* v. *Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (internal quotation marks omitted) (emphasis in original).[14]  To avoid dismissal on pleading grounds under this standard, a plaintiff cannot rely on conclusory statements and unsupported assertions.  *See Patane*, 508 F.3d at 112.  Instead, he must make non-conclusory factual allegations sufficient to support a plausible inference that he was subjected to an adverse action "*because of*" his race or other protected characteristic.  *Id.*; *see, e.g.*, *Sanders* v. *Grenadier Realty*, 367 F. App'x 173, 175 (2d Cir. 2010) (affirming dismissal "because plaintiffs do not allege any facts supporting an

---

[13] *But cf. Giscombe* v. *N.Y.C. Dep't of Educ.*, --- F. Supp. 2d ----, No. 12 Civ. 464 (AT), 2014 WL 3974582, at *7-8 (S.D.N.Y. Aug. 12, 2014) (noting an apparent "discrepancy in the Second Circuit's case law" regarding the viability of Equal Protection retaliation claims).

[14] While *Patane* was a Title VII case, it is clear that, as a general matter, employment discrimination claims asserted under § 1983 and § 1985, alleging violations of the Equal Protection Clause, "are evaluated under the same standards as Title VII claims."  *Chick* v. *Cnty. of Suffolk*, 546 F. App'x 58, 59 (2d Cir. 2013); *see, e.g.*, *Butts* v. *N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 00-CV-6307 (KMK), 2007 WL 259937, at *7 n.10 (S.D.N.Y. Jan. 29, 2007), *aff'd*, 307 F. App'x 596 (2d Cir. 2009).  Notably, however, a plaintiff may not assert a § 1983 or § 1985 employment discrimination claim "to vindicate rights conferred only by . . . Title VII."  *Patterson* v. *Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  To the extent Plaintiff may be attempting to do so in this case, the Amended Complaint is subject to dismissal for that reason as well.  *See also supra* note 5.

inference of racial animus"); *see also EEOC* v. *Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014).

Here, Plaintiff's conclusory assertions of race discrimination are completely unsupported by "any factual circumstances from which a [discriminatory] motivation for [any adverse employment] action [by CUNY] might be inferred." *Patane*, 508 F.3d at 112.  The Amended Complaint "does not, for instance, allege that [any CUNY official] made any remarks that could be viewed as reflecting discriminatory animus." *Id.*; *see, e.g.*, *Rolle* v. *Educ. Bus Transp., Inc.*, No. 11-cv-3855 (SJF) (AKT), 2013 WL 783026, at *11 (E.D.N.Y. Feb. 12, 2013) (dismissing Title VII race discrimination claim where plaintiff failed to point to "discriminatory remarks" by defendant), *adopted by* 2013 WL 783011 (E.D.N.Y. Feb. 27, 2013).  Nor does it set forth any non-conclusory, factual allegations that similarly situated, non-African-American employees "were given preferential treatment when compared to Plaintiff." *Patane*, 508 F.3d at 112.

To be sure, Plaintiff baldly asserts that "the scholarship and academic standards applied to [his] tenure application were far different than the scholarship and academic applied to [his] white peers," that "[w]hite Professors were routinely granted tenure with the same academic and scholarships credentials possessed by [Plaintiff]," and that this was all "a part of systemic discrimination at the College against African American employees."  (Am. Cplt. ¶¶ 5, 23-24.) But such conclusory assertions, without factual allegations to support them, cannot state a plausible claim for employment discrimination.  *See, e.g.*, *Sanders*, 367 F. App'x at 175; *Rolle*, 2013 WL 783026, at *12 (dismissing employment discrimination action despite "Plaintiff's broad statements" in the complaint "regarding the preferential treatment of Caucasian drivers as compared to African-American drivers" because it lacked "the necessary factual content"); *Manolov* v. *Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 533 (S.D.N.Y. 2013)

16

(dismissing race discrimination claim where plaintiff "makes the assertion that BMCC professors 'intentionally treated all white males . . . in an adverse manner by maliciously downgrading their exams,'" but failed to allege any supporting facts).

Indeed, where, as here, "a plaintiff seeks to derive an inference of discrimination from allegations of disparate treatment, he or she must plausibly allege the existence of at least one comparator who was more favorably treated despite being 'similarly situated to the plaintiff in all material respects.'" *Thompson* v. *New York City*, No. 12 Civ. 8034 (PAE), 2013 WL 6409326, at *8 (S.D.N.Y. Dec. 9, 2013); *see, e.g.*, *Alessi* v. *N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F. Supp. 3d 221, 227-28 (W.D.N.Y. 2014) (dismissing employment discrimination claim where plaintiff failed to provide examples of any similarly situated employees being treated differently).  Plaintiff does not come close to meeting that requirement.

On the contrary, what Plaintiff offers in the Amended Complaint are, at best, "'conclusory allegations of disparate treatment' and 'personal opinion that such treatment was motivated by discriminatory intent.'"  *Gaddy* v. *Waterfront Comm'n*, No. 13 Civ. 3322 (AT)(HBP), 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014).  That does not create, or even support, any plausible inference of race discrimination here.  *See, e.g.*, *id.*; *Sanders*, 367 F. App'x at 175.

Even on their own terms, in fact, Plaintiff's conclusory allegations in the Amended Complaint fall short, as they assert only that CUNY's alleged actions "were done maliciously *and/or in reckless disregard* of [P]laintiff's rights."  (Am. Cplt. ¶ 28 (emphasis added).)  But, under the law, more is required of § 1983 and § 1985 claims alleging violations of the Equal Protection Clause.  As the Second Circuit has held, "a plaintiff pursuing a claimed . . . denial of equal protection under § 1983 must show that the discrimination was intentional."  *Reynolds* v.

17

*Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (quoting *Patterson*, 375 F.3d at 226) (internal

quotation marks omitted).  Likewise, § 1985 "require[s] 'some racial, or otherwise class-based,

invidiously discriminatory animus behind the conspirators' action.'"  *Id.* at 201-02 (quoting

*Griffin* v. *Breckenridge*, 403 U.S. 88, 102 (1971)).  Plaintiff fails to even conclusorily allege

either here.

Accordingly, on this basis as well, Plaintiff's race-based employment discrimination

claims against CUNY should be dismissed as a matter of law.[15]

### D.    Plaintiff Has Failed to State a Plausible Retaliation Claim

Though no retaliation claim under the Fourteenth Amendment exists here, *see supra*

Point II.B, it should be noted that Plaintiff's retaliation claim against CUNY would also fail

because, even under the standards that would be applicable in the Title VII context, he does not

plausibly allege that he was retaliated against for complaining of race discrimination.

To state such a Title VII retaliation claim, a plaintiff must plausibly allege:  "(1)

participation in a protected activity known to the defendants; (2) adverse action by the

defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed]

activity and defendants' adverse action."  *Simpson* v. *Uniondale Union Free Sch. Dist.*, 702 F.

Supp. 2d 122, 134 (E.D.N.Y. 2010) (citation omitted); *see, e.g.*, *Allen* v. *N.Y.C. Dep't of Envt'l

*Prot.*, --- F. Supp. 3d ----, No. 13-CV-203 (KMK), 2014 WL 5011096, at *8 (S.D.N.Y. Sept. 30,

---

[15] To the extent Plaintiff may be attempting to raise a hostile work environment claim, that, too fails on pleading grounds.  This is so for the reasons just discussed.  *See, e.g.*, *Pearson* v. *Bd. of Educ.*, 499 F. Supp. 2d 575, 592 (S.D.N.Y. 2007) (noting that "a hostile work environment claim . . . requires a showing that the conduct occurred because of plaintiff's membership in a protected class").  And it is also so because, aside from a single, conclusory assertion that Plaintiff "was subjected to constant harassment by the Department's Chairs" (Am. Cplt. ¶ 14), the Amended Complaint is utterly devoid of allegations of workplace misconduct, let alone the sort of "severe or pervasive" misconduct that, even if proved, would rise to the level of a hostile work environment.  *See, e.g.*, *Clarke* v. *InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671 (JPO), 2013 WL 2358596, at *10 (S.D.N.Y. May 30, 2013) (dismissing hostile work environment claim where plaintiff's "allegations do not plausibly point to a work environment that is sufficiently abusive to constitute a hostile workplace").

2014).  Plaintiff cannot satisfy the "protected activity" and "causal connection" requirements.

First, in order for any previous complaint by Plaintiff to qualify as "protected activity," he must have had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *Wimmer* v. *Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999) (internal quotation marks omitted).  Although Plaintiff alleges that he "requested the College counsel to investigate" charges of "race discrimination taken against him" by the current Chair and the former Chair of John Jay's Economics Department College (*see* Am. Cplt. ¶ 17), the Amended Complaint is otherwise devoid of any facts regarding this alleged discrimination or Plaintiff's charges.  Thus, there is simply nothing in the Amended Complaint that would allow a plausible inference that Plaintiff's accusations were based on a reasonable belief that he had been subjected to discrimination.  *See, e.g.*, *Williams* v. *Time Warner Inc.*, 440 F. App'x 7, 10 (2d Cir. 2011) (affirming dismissal of retaliation claim where plaintiff's "complaint merely provides a list of allegations of mistreatment by her employer and suggests the weakest of reasons that she believed her rights had been violated").

Second, Plaintiff does not plausibly allege a causal connection between his complaint and any adverse actions.  As in the discrimination context, it is not enough for Plaintiff merely to assert that he made a complaint and was then subjected to an adverse action.  Instead, he must set forth non-conclusory factual allegations sufficient to allow the plausible inference that he was subjected to the adverse action *because of* his complaint.  *See Delgado* v. *Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 461-62 (S.D.N.Y. 2007); *Reyes* v. *City Univ. of N.Y.*, 06 Civ. 3639 (CM), 2007 WL 2186961, at *5-7 (S.D.N.Y. Jul. 26, 2007).  Here, however, Plaintiff asserts not that things markedly changed after his discrimination complaint, but rather alleges "constant harassment" and "systemic discrimination" starting before and continuing after the

complaint, ultimately culminating in his nonreappointment at the end of 2012-2013 academic year.  (Am. Cplt. ¶¶ 3-4, 14-15.)  As the Second Circuit has held, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  *Slattery* v. *Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *see, e.g.*, *Monclova* v. *City of New York,* CV-05-3164 (DGT), 2008 WL 822117, at *9 (E.D.N.Y. Mar. 26, 2008).

Accordingly, if it were not already barred for all of the reasons discussed herein, *see supra* Points I, II.A. & II.B, Plaintiff's retaliation claim would also be subject to dismissal here for failure to assert a plausible claim.

### E.   Plaintiff's § 1985 Claims Are Also Precluded for Failure to Allege a Conspiracy and Under the Intracorporate Conspiracy Doctrine

Plaintiff's purported claims under § 1985 are also precluded because the Amended Complaint fails to set forth any allegations regarding the existence of a conspiracy.  "Mere conclusory allegations that a conspiracy took place, without any factual basis evidencing a 'meeting of the minds' between the defendants, will warrant dismissal of a § 1985 claim." *Bivens* v. *Schrior*, No. 12-CV-2915 (CBA)(LB), 2012 WL 2872399, at *4 (E.D.N.Y. July 10, 2012); *see Webb* v. *Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003).  The Amended Complaint does not contain even that.  Furthermore, given that the only individuals mentioned in the Amended Complaint are CUNY employees and the only entity mentioned is CUNY, even if a conspiracy had been alleged, Plaintiff's § 1985 claims would still fail here under the intracorporate conspiracy doctrine.  *See, e.g.*, *Lucas* v. *Meier*, No. 11 Civ. 0872 (ER), 2013 WL 1309622, at *8 (S.D.N.Y. Mar. 30, 2013) (dismissing § 1985 claim "because the alleged conspirators are members of the same public entity" and thus "are legally incapable of conspiring together");

*Burrell v. City Univ. of N.Y.*, 995 F. Supp. 398, 414 (S.D.N.Y. 1998) (dismissing § 1985 claim

against CUNY employees under the intracorporate conspiracy doctrine).

## <u>CONCLUSION</u>

For the foregoing reasons, CUNY's motion should be granted and the Amended

Complaint should be dismissed with prejudice.

Dated:  New York, New York
        January 7, 2014

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendant*

By:

/s/ **William J. Taylor, Jr.**
William J. Taylor, Jr.
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov
