UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER WARBURTON,

                       Plaintiff,

    - against -

JOAN HOFFMAN, in her individual capacity;
JAY HAMILTON, in his individual capacity; and
JEREMY TRAVIS, in his individual capacity,

                    Defendants.

14-cv-9170 (JPO)

**Original Filed by ECF**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendants*
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

WILLIAM J. TAYLOR, JR.
Assistant Attorney General
    *Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF ALLEGED FACTS......................................................................................... 2

A.  The Parties ....................................................................................................................... 3

B.  Plaintiff's Non-Reappointment and Denial of Tenure...................................................... 3

C.  Plaintiff's Other Allegations of "Race Discrimination and Retaliation"............................ 5

D.  The SDHR and EEOC Proceedings................................................................................. 6

E.  Plaintiff's Action Against CUNY .................................................................................... 6

F.  The Court's June 29, 2015 Opinion and Order................................................................. 7

G.  The Second Amended Complaint ..................................................................................... 8

ARGUMENT ............................................................................................................................... 9

POINT I      PLAINTIFF'S ALLEGED RETALIATION CLAIMS ARE
             PRECLUDED ON QUALIFIED IMMUNITY GROUNDS.................................. 9

POINT II      PLAINTIFF HAS FAILED TO STATE A CLAIM OF DISCRIMINATION.... 12

POINT III      PLAINTIFF HAS FAILED TO STATE A CLAIM OF RETALIATION .......... 16

POINT IV      PLAINTIFF'S ALLEGED CLAIMS UNDER THE
             NEW YORK STATE CONSTITUTION ALSO FAIL ....................................... 19

POINT V      PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ON
             MULTIPLE ADDITIONAL GROUNDS............................................................ 21

A.  Plaintiff's § 1983 and § 1985 Claims Are Barred by Collateral Estoppel......................... 21

B.  Plaintiff's § 1985 Claims Are Also Precluded for Failure to Allege
    a Conspiracy and Under the Intracorporate Conspiracy Doctrine .................................... 23

C.  Injunctive Relief Does Not Lie Here Against Defendants................................................. 24

CONCLUSION.......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allessi v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
  16 F. Supp. 3d 221 (W.D.N.Y. 2014) ........................................................................14

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
  365 F.3d 107 (2d Cir. 2004) .....................................................................................15

*Bernheim v. Litt*,
  79 F.3d 318 (2d Cir. 1996) ................................................................................. 10-11

*Betts v. Sherman*,
  No. 12 Civ. 3195 (JPO), 2013 WL 311124 (S.D.N.Y. Jan. 24, 2013), *aff'd*, 751 F.3d
  78 (2d Cir. 2014) .......................................................................................................10

*Bivens v. Schrior*,
  No. 12-CV-2915 (CBA)(LB), 2012 WL 2872399 (E.D.N.Y. July 10, 2012) ........................24

*Burhans v. Lopez*,
  24 F. Supp. 3d 375 (S.D.N.Y. 2014) .........................................................................16

*Burrell v. City Univ. of N.Y.*,
  995 F. Supp. 398 (S.D.N.Y. 1998) ............................................................................24

*Burton v. Ark. Sec'y of State*,
  737 F.3d 1219 (8th Cir. 2013) ..................................................................................11

*Báez v. New York*,
  --- F. App'x ----, 2015 WL 6642971 (2d Cir. Nov. 2, 2015) ............................... 18-19

*Callahan v. Consol. Edison Co. N.Y., Inc.*,
  187 F. Supp. 2d 132 (S.D.N.Y. 2002) .......................................................................18

*Clarke v. InterContinental Hotels Grp., PLC*,
  No. 12 Civ. 2671 (JPO), 2013 WL 2358596 (S.D.N.Y. May 30, 2013) ..................16

*Corrado v. New York State Unified Court System*,
  No. CV 2012-1748 (DLI) (MDG), 2014 WL 4626234 (E.D.N.Y. Sept. 15, 2014) ...............11

*DeCintio v. Westchester Cnty. Med. Ctr.*,
  821 F.2d 111 (2d Cir. 1987) .....................................................................................22

*Dotson v. Farrugia*,
  No. 11 Civ. 1126 (PAE), 2012 WL 996997 (S.D.N.Y. Mar. 26, 2012) ...................20

*Erasmus v. Deutsche Bank Americas Holding Corp.*,
   No. 15 Civ. 1398 (PAE), 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015) ...............................19

*Floyd v. S. Westchester BOCES*,
   No. 14 CV 5842 (VB), 2015 WL 5459992 (S.D.N.Y. July 31, 2015) ....................................19

*Gaddy v. Waterfront Comm'n*,
   No. 13 Civ. 3322 (AT)(HBP), 2014 WL 4739890 (S.D.N.Y. Sept. 19, 2014).......................15

*Guan N. v. N.Y.C. Dep't of Educ.*,
   No. 11 Civ. 4299 (AJN), 2013 WL 67604 (S.D.N.Y. Jan. 7, 2013).......................................20

*Hagan v. City of New York*,
   39 F. Supp. 3d 481 (S.D.N.Y. 2014)....................................................................................11

*Hare v. Hayden*,
   No. 09 Civ. 3135 (RWS), 2011 WL 1453789 (S.D.N.Y. Apr. 14, 2011)...............................18

*Henry v. N.Y.C. Health & Hosp. Corp.*,
   18 F. Supp. 3d 396 (S.D.N.Y. 2014)....................................................................................14

*Hershey v. Goldstein*,
   938 F. Supp. 2d 491 (S.D.N.Y. 2013)..................................................................................20

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010)........................................................................................... 10-11

*In re Aegon N.V. Secs. Litig.*,
   No. 03 Civ. 0603 (RWS), 2004 WL 1415973 (S.D.N.Y. June 23, 2004) ................................4

*Johnson v. Cnty. of Nassau*,
   411 F. Supp. 2d 171 (E.D.N.Y. 2006) ........................................................................ 6, 22-23

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
   716 F.3d 10 (2d Cir. 2013)...................................................................................................17

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
   274 F.3d 706 (2d Cir. 2001).................................................................................................22

*Kuck v. Danaher*,
   822 F. Supp. 2d 109 (D. Conn. 2011) ..................................................................................24

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015)....................................................................................... *passim*

*Lucas v. Meier*,
   No. 11 Civ. 0872 (ER), 2013 WL 1309622 (S.D.N.Y. Mar. 30, 2013)..................................24

*Lyles v. State*,
  2 A.D.3d 694 (2d Dep't 2003), *aff'd*, 3 N.Y.3d 396 (2004) ............................................. 19-20

*Macer v. Bertucci's Corp.*,
  No. 13-CV-2994 (JFB)(ARL), 2013 WL 6235607 (E.D.N.Y. Dec. 3, 2013) ........................22

*Manolov v. Borough of Manhattan Cmty. Coll.*,
  952 F. Supp. 2d 522 (S.D.N.Y. 2013)...................................................................................14

*Martinez v. City of Schenectady*,
  97 N.Y.2d 78 (2001) .............................................................................................................19

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985).................................................................................................................9

*Muhammad v. N.Y.C. Transit Auth.*,
  450 F. Supp. 2d 198 (E.D.N.Y. 2006) ..................................................................................20

*Musaji v. Banco do Brazil*,
  No. 10 Civ. 8541 (RJH), 2011 WL 2507712 (S.D.N.Y. June 21, 2011) ..................................6

*Patane v. Clark*,
  508 F.3d 106 (2d Cir. 2007)............................................................................................. 12-13

*Pearson v. Bd. of Educ.*,
  499 F. Supp. 2d 575 (S.D.N.Y. 2007)...................................................................................16

*Randle v. Alexander*,
  960 F. Supp. 2d 457 (S.D.N.Y. 2013).............................................................................. 9-10

*Rapoport v. Asia Elecs. Holding Co.*,
  88 F. Supp. 2d 179 (S.D.N.Y. 2000)......................................................................................4

*Ratliff v. DeKalb Cnty.*,
  62 F.3d 338 (11th Cir. 1995) ........................................................................................... 11-12

*Reichle v. Howards*,
  132 S. Ct. 2088 (2012)................................................................................................ 9, 11-12

*Rhee-Karn v. Burnett*,
  No. 13 Civ. 6132 (JPO), 2014 WL 4494126 (S.D.N.Y. Sept. 12, 2014)..................................2

*Rockland Vending Corp. v. Creen*,
  No. 07-CV-6268 (KMK), 2009 WL 2407658 (S.D.N.Y. Aug. 4, 2009)................................24

*Roland v. McMonagle*,
  No. 12 Civ. 6331 (JPO), 2015 WL 5918179 (S.D.N.Y. Oct. 9, 2015)....................................12

iv

*Rolle v. Educ. Bus Transp., Inc.*,
  No. 11-cv-3855 (SJF) (AKT), 2013 WL 783026 (E.D.N.Y. Feb. 12, 2013), *adopted by* 2013 WL 783011 (E.D.N.Y. Feb. 27, 2013) .............................................................. 13-14

*Sanders v. Grenadier Realty*,
  367 F. App'x 173 (2d Cir. 2010) .................................................................... 13-15

*Sank v. City Univ. of N.Y.*,
  No. 10 Civ. 4975 (RWS), 2011 WL 5120668 (S.D.N.Y. Oct. 28, 2011) .................................. 9

*Siani v. State Univ. of N.Y. at Farmingdale*,
  7 F. Supp. 3d 304 (E.D.N.Y. 2014) .............................................................. 11, 15

*Simpson v. Uniondale Union Free Sch. Dist.*,
  702 F. Supp. 2d 122 (E.D.N.Y. 2010) ................................................................. 17

*Slattery v. Swiss Reinsurance Am. Corp.*,
  248 F.3d 87 (2d Cir. 2001) ........................................................................... 18

*Sullivan v. N.Y.C. Dep't of Investigation*,
  No. 12 Civ. 2564 (TPG), 2014 WL 1244666 (S.D.N.Y. Mar. 26, 2014) ........................... 21-22

*Thompson v. New York City*,
  No. 12 Civ. 8034 (PAE), 2013 WL 6409326 (S.D.N.Y. Dec. 9, 2013) .............................. 14

*Townes v. City of New York*,
  176 F.3d 138 (2d Cir. 1998) .......................................................................... 16

*Turkmen v. Hasty*,
  789 F.3d 218 (2d Cir. 2015) ........................................................................... 9

*Univ. of Tenn. v. Elliot*,
  478 U.S. 788 (1986) ................................................................................. 21

*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015) ..................................................................... *passim*

*Webb v. Goord*,
  340 F.3d 105 (2d Cir. 2003) .......................................................................... 24

*Williams v. Time Warner Inc.*,
  440 F. App'x 7 (2d Cir. 2011) .................................................................... 17-18

## STATUTES

42 U.S.C. § 1981 .................................................................................. 6, 18

42 U.S.C.  § 1983 ............................................................................. *passim*

42 U.S.C. § 1985................................................................................................... *passim*

Title VII of the Civil Rights Act of 1964, 42 U.S.C.
    § 2000e *et seq* ("Title VII"). ................................................................. 12-13,17, 20

New York State Human Rights Law
    N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"). ...................................................20

Defendants Joan Hoffman ("Hoffman"), Jay Hamilton ("Hamilton"), and Jeremy Travis ("Travis") (collectively, "Defendants"), by their attorney, Eric T. Schneiderman, Attorney General of the State of New York, respectfully submit this memorandum of law in support of their motion, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint in this action, dated July 29, 2015, and each and every cause of action and request for relief asserted therein in its entirety, with prejudice.

## PRELIMINARY STATEMENT

Plaintiff Christopher Warburton ("Plaintiff"), an African-American former Assistant Professor of Economics at John Jay College of Criminal Justice ("John Jay College" or "John Jay"), a senior college within the City University of New York ("CUNY"), brings this action under 42 U.S.C. §§ 1983 and 1985 and the New York State Constitution, alleging that, during the course of his employment at John Jay, he was unlawfully discriminated against by Defendants on the basis of his race and unlawfully retaliated against by them for complaining of race discrimination.

Plaintiff previously brought virtually identical claims against CUNY itself, which were dismissed by this Court earlier this year.  (ECF Docket No. 24.)  The discrimination and retaliation claims Plaintiff now brings against Defendants are likewise without merit, and should be dismissed as a matter of law, for several reasons:

*First*, because the right to be free from retaliation under the Equal Protection Clause was not clearly established in the Second Circuit at the time of the challenged conduct here, Plaintiff's retaliation claims, as against each of the Defendants, are precluded as a matter of law on qualified immunity grounds.  *See infra* Point I.

**Second**, Plaintiff has failed to state a plausible claim of race-based employment discrimination.  *See infra* Point II.

**Third**, he has also failed to state a plausible retaliation claim against any of the Defendants.  *See infra* Point III.

**Fourth**, Plaintiff's purported claims under the New York State Constitution are not actionable and, in any event, do not state a plausible cause of action.  *See infra* Point IV.

**Fifth**, given the prior state administrative investigation and findings with respect to Plaintiff's discrimination and retaliation claims, dismissal of the action is warranted here on collateral estoppel grounds as well.  *See infra* Point V.A.

**Sixth**, Plaintiff's § 1985 claims independently fail because he has not alleged the existence of a conspiracy, and because such claims are precluded here by the intracorporate conspiracy doctrine.  *See infra* Point V.B.

**Finally**, because Defendants are sued here only in their individual capacities, the injunctive relief Plaintiff seeks simply does not lie against them.  *See infra* Point V.C.

For all these reasons, discussed in detail below, Defendants' motion should be granted, and the Second Amended Complaint should be dismissed with prejudice.

## STATEMENT OF ALLEGED FACTS

This statement is based on the allegations in the Second Amended Complaint ("SAC," a copy of which is attached as Exhibit A to the accompanying Declaration of William J. Taylor, Jr. ("Taylor Declaration" or "Taylor Decl.")), which are accepted as true for purposes of this motion only, except as otherwise noted herein, as well as other documents, noted below, that the Court may properly consider on this motion to dismiss.[1]

---

[1] *See, e.g.*, *Rhee-Karn v. Burnett*, No. 13 Civ. 6132 (JPO), 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014) (noting that, in ruling on a Rule 12(b)(6) motion, a court may consider "the complaint; documents

A.    **The Parties**

Plaintiff is an African-American former Assistant Professor of Economics at John Jay College.  (SAC ¶¶ 1, 9.)  Plaintiff served as an Assistant Professor at John Jay from 2006 until 2013.  (*Id.* ¶¶ 9, 19-22; Taylor Decl. Ex. F (Nov. 20, 2012 Letter from Jeremy Travis, President of John Jay, to Plaintiff).)[2]

Defendant Hoffman is a Professor and former Chair of the Economics Department at John Jay College.  (SAC ¶ 4.)[3]  Defendant Hamilton is an Assistant Professor and current Chair of the Economics Department at John Jay College.  (SAC ¶ 3.)[4]  Defendant Travis is the President of John Jay College.  (SAC ¶¶ 5, 22.)[5]  Each of the Defendants is sued here only in his or her individual capacity.  (SAC at 1.)

B.    **Plaintiff's Non-Reappointment and Denial of Tenure**

In a letter dated November 20, 2012, President Travis, in accord with the recommendation of the college-wide Faculty Personnel Committee, informed Plaintiff that John Jay had decided "not to reappoint [him] to the faculty in the Department of Economics at John

---

that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken").

[2] Plaintiff alleges that he was first hired as an Assistant Professor in the Economics Department at John Jay.  (SAC ¶ 9.)  But that is plainly incorrect, as John Jay did not have an Economics Department at that time.  (Taylor Decl. Ex. J (John Jay Undergraduate Bulletin, 2005-07); *id.* Ex. K (John Jay Undergraduate Bulletin, 2007-08).)  Instead, Plaintiff was initially hired, for the 2006-2007 academic year, as an Assistant Professor in John Jay's Department of Public Management.  (*Id.* Ex. K at 202, 226; SAC ¶ 9.)  He was then transferred to the newly created Economics Department, as an Assistant Professor, during the 2008-2009 academic year.  (Taylor Decl. Ex. L (John Jay Undergraduate Bulletin, 2008-09) at 201, 229.)  Plaintiff's allegations in this regard should not be accepted as true on this motion to dismiss, and, in any event, they do not affect any of the grounds for dismissal here.  *See infra* note 6.

[3] *See http://www.jjay.cuny.edu/faculty/joan-hoffman* (last visited Dec. 18, 2015).

[4] *See* http://www.jjay.cuny.edu/faculty/jay-p-hamilton (last visited Dec. 18, 2015).

[5] Plaintiff's reference to President Travis as "Dean of the College" (SAC ¶ 5) is incorrect.  *See* http://www.jjay.cuny.edu/faculty/jeremy-travis (last visited Dec. 18, 2015); (*see also, e.g.*, Taylor Decl. Exs. F, H-I).  It should not be accepted as true on this motion and, regardless, does not affect any of the arguments for dismissal.  *See infra* note 6.

Jay College of Criminal Justice" when his current appointment expired on August 31, 2013. (SAC ¶ 19; Taylor Decl. Ex. F; *id.* Ex. E (Nov. 15, 2012 Letter from Jane Bowers, Provost and Senior Vice President for Academic Affairs of John Jay, to Plaintiff).)  Plaintiff's appeal of this decision was denied by the Faculty Personnel Committee, and President Travis concurred. (Taylor Decl. Ex. G (Dec. 26, 2012 Letter from Jane Bowers, Provost and Senior Vice President for Academic Affairs of John Jay, to Plaintiff).)  Plaintiff then appealed directly to President Travis, and that appeal was also denied.  (*Id.* Ex. H (Feb. 1, 2013 Letter from President Travis to Plaintiff).)[6]

On February 28, 2013, upon Plaintiff's request, President Travis issued a letter setting forth the reasons for his decision.  (Taylor Decl. Ex. I (Feb. 28, 2013 Letter from President Travis to Plaintiff); *see* SAC ¶ 25.)  As President Travis stated, pursuant to his duties as President of John Jay, he "made an independent review of [Plaintiff's] entire academic record and based on [his] academic judgment decided to deny [Plaintiff's] appeal."  (Taylor Decl. Ex. I at 1.)  In particular, as President Travis explained and detailed in the letter, his decision "rest[ed] on two concerns, each of which independently constitutes sufficient reason for denying [Plaintiff's] reappointment with tenure: lack of collegiality toward [his] colleagues in [his] department and inadequate scholarship."  (*Id.* at 1-3; *see* SAC ¶ 22.)

---

[6] Plaintiff's recitation in the Second Amended Complaint of the process resulting in the decision to deny him reappointment and tenure (*i.e.*, that the governing tenure review committee at John Jay approved him for reappointment with tenure but this decision was then reversed (SAC ¶¶ 21-22)) is not an accurate one, is contradicted by documents properly before the Court on this motion to dismiss, and should not be accepted as true for purposes for this motion.  *See, e.g., In re Aegon N.V. Secs. Litig.*, No. 03 Civ. 0603 (RWS), 2004 WL 1415973, at *5 (S.D.N.Y. June 23, 2004) ("The truth of factual allegations that are contradicted by documents properly considered on a motion to dismiss need not be accepted."); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (holding that where the allegations in a plaintiff's complaint are contradicted by another document or documents that the Court may properly consider on a motion to dismiss, "the documents control and this Court need not accept as true the allegations in the . . . complaint").  In any event, like the other factual inaccuracies in the Second Amended Complaint, *see supra* notes 2, 5, none of this procedural history affects any of the grounds for dismissal here.

Plaintiff alleges in the Second Amended Complaint, without any factual explication, that the reasons provided for his non-reappointment and denial of tenure were "specious"; that "[t]hese reasons never justified the denial of tenure to his white peers"; that "the scholarship and academic standards applied to [his] tenure application were far different than the scholarship and academic standards applied to [his] white peers"; and that "[w]hite Professors were routinely granted tenure with the same academic and scholarship credentials possessed by [Plaintiff]." (SAC ¶¶ 25-27.)  And while Plaintiff appears to acknowledge that it was ultimately President Travis's decision to deny him reappointment and tenure (*id.* ¶ 22), he asserts, again without any supporting factual allegations, that defendants Hoffman and Hamilton "presided over tenure and promotion decisions relating to [him]" and "substantially influenced the decision to deny him tenure."  (*Id.* ¶¶ 23-24.)

## C.    Plaintiff's Other Allegations of "Race Discrimination and Retaliation"

Plaintiff also alleges, once more without further factual support or explication, that, "[a]s the only African American member of the [John Jay Economics] Department's faculty, [he] was subjected to constant harassment by the Department's Chairs."  (*Id.* ¶ 17.)  He baldly asserts, with no specifics, that the alleged race discrimination he experienced "was a part of systemic discrimination at the College against African American employees which infected the College's personnel practices, including, but not limited to, hiring, promotion, and tenure decisions."  (*Id.* ¶ 7.)  And he further alleges that, on October 17, 2011, his personnel file "disappeared from the Provost's office" without explanation, though he does not link this alleged disappearance to race discrimination or retaliation -- or, notably, to any of the three named Defendants.  (*Id.* ¶¶ 18, 29.)

On September 10, 2012, Plaintiff alleges that he "requested the College counsel to investigate the race discrimination taken against him by [Hoffman and Hamilton]."  (*Id.* ¶ 20.)

He provides no additional information, however, regarding this request, the alleged

discrimination referenced, or the results of any investigation.

### D.    The SDHR and EEOC Proceedings

On November 21, 2013, Plaintiff filed a verified complaint with the New York State

Division of Human Rights (the "SDHR"), which was dual-filed with the U.S. Equal Employment

Opportunity Commission (the "EEOC"), alleging that CUNY had discriminated against him on

the basis of his race and his national origin and had retaliated against him for complaining about

purported "employment improprieties."  (Taylor Decl. Ex. M (SDHR Complaint).)[7]  On May 21,

2014, after investigating the charges, the SDHR dismissed the complaint, determining that there

was no probable cause to believe that CUNY has engaged or is engaging in unlawful

discrimination or retaliation against Plaintiff.  (Taylor Decl. Ex. N (SDHR Determination and

Order After Investigation).)  On June 19, 2014, the EEOC issued its own Dismissal and Notice

of Rights with respect to Plaintiff's discrimination charge, adopting the findings of the SDHR.

(*Id.* Ex. O (EEOC Dismissal and Notice of Rights).)

### E.    Plaintiff's Action Against CUNY

On October 14, 2014, Plaintiff commenced an action in the Supreme Court of the State of

New York, New York County, asserting claims against CUNY under 42 U.S.C. § 1981 for both

race discrimination and retaliation.  (Complaint ¶¶ 32-34.)[8]  On November 18, 2014, CUNY

---

[7] *See, e.g.*, *Musaji v. Banco do Brazil*, No. 10 Civ. 8541 (RJH), 2011 WL 2507712, at *4 n.4 (S.D.N.Y. June 21, 2011) (noting that "with respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents [on a motion to dismiss] because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims" (internal quotation marks omitted)); *Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 177-78 (E.D.N.Y. 2006) (considering "the entire []SDHR investigatory file pertaining to [p]laintiff's case" on Rule 12(b)(6) motion to dismiss).

[8] A copy of the original Complaint is attached as part of Exhibit C to the accompanying Taylor Declaration.

timely removed the action to this Court. (Ex. C (Notice of Removal with Summons and Complaint).) Then, a week later, on November 25, 2014, Plaintiff filed the Amended Complaint -- which was identical to the original Complaint but for one notable exception. Plaintiff no longer brought his claims pursuant to 42 U.S.C. § 1981 (which was dropped as a cause of action), but instead alleged violations by CUNY of "the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 and 42 U.S.C. § 1985." (Amended Complaint ("AC") ¶¶ 32-34.)[9] No claims were alleged, in either the Complaint or the Amended Complaint, against Hoffman, Hamilton, or Travis.

On January 7, 2015, CUNY moved, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all of Plaintiff's claims in the Amended Complaint with prejudice. (ECF Docket Nos. 10-12.) Plaintiff opposed. (ECF Docket No. 20.) And, in response to CUNY's motion, on January 14, 2015, Plaintiff also moved (i) to remand the case back to the New York State Supreme Court or (ii) alternatively, for leave to file a Second Amended Complaint, "to add a cause of action pursuant to the New York State Constitution and add the three individual defendants," *i.e.*, Hoffman, Hamilton, and Travis. (ECF Docket Nos. 13-15.) CUNY opposed Plaintiff's motion. (ECF Docket No. 21.)

**F.**     **The Court's June 29, 2015 Opinion and Order**

In an Opinion and Order dated June 29, 2015, this Court denied Plaintiff's motion to remand, granted CUNY's motion to dismiss, and granted Plaintiff's request for leave to amend its pleading. (ECF Docket No. 24.)[10]

With respect to CUNY's motion, the Court held that dismissal was appropriate because

---

[9] A copy of the Amended Complaint is attached as Exhibit D to the accompanying Taylor Declaration.

[10] A copy of the Court's June 29, 2015 Opinion and Order is attached as Exhibit B to the accompanying Taylor Declaration.

CUNY is not a "person" within the meaning of §§ 1983 and 1985 and thus cannot be sued under those statutes. (*Id.* at 6.)[11]  Accordingly, all claims against CUNY in this action were dismissed as a matter of law. (*Id.*)  The Court did not reach the other grounds for dismissal set forth by CUNY, however, including CUNY's argument that the Amended Complaint failed to state a plausible claim of race-based employment discrimination or retaliation. (*Id.* at 3, 6.)

The Court allowed Plaintiff to file a Second Amended Complaint to add allegations and claims against Hoffman, Hamilton, and Travis, determining that, "at the present stage" and on the record then before it, it was not clear that Plaintiff could not overcome a potential collateral estoppel bar as to such claims. (*Id.* at 7.)

## G.    The Second Amended Complaint

On July 29, 2015, Plaintiff filed the Second Amended Complaint, alleging claims against Defendants under § 1983, § 1985, and the New York State Constitution for alleged race discrimination and retaliation. (SAC ¶¶ 35-39.)  As in his prior pleadings, Plaintiff seeks an unspecified amount of compensatory damages, punitive damages, "promotion and reinstatement of tenure status," and attorneys' fees and costs. (*Id.* at 5-6.)  Other than the new named defendants (Hoffman, Hamilton, and Travis) and the new cause of action asserted (under the state constitution), the allegations in the Second Amended Complaint are identical to those set forth in the Amended Complaint.[12]

---

[11] The Court did not construe the Amended Complaint as having raised a claim against CUNY directly under the Fourteenth Amendment.  And, as noted below, *see infra* note 13, no such claim is available to Plaintiff.

[12] On its face, the Second Amended Complaint purports to allege claims not only against Hoffman, Hamilton, and Travis, but also against CUNY. (*See* SAC ¶¶ 2-5.)  As Plaintiff has acknowledged, however, the inclusion of CUNY as a defendant in the Second Amended Complaint was in error, and any claims alleged against CUNY in the Second Amended Complaint were dismissed and are precluded by the Court's July 29, 2015 Opinion and Order. (*See* Taylor Decl. Ex. B (ECF Docket No. 27) at 1.)  Thus, by stipulation of the parties, which was so ordered by the Court on August 17, 2015, any and all claims

Defendants now move to dismiss the Second Amended Complaint for the reasons discussed below.

## ARGUMENT

### POINT I

### PLAINTIFF'S ALLEGED RETALIATION CLAIMS ARE PRECLUDED ON QUALIFIED IMMUNITY GROUNDS

Plaintiff asserts retaliation claims against Defendants, under § 1983 and § 1985, for alleged violation of the Equal Protection Clause of the Fourteenth Amendment.  (SAC ¶¶ 35-37.)[13]  These retaliation claims are precluded, and should be dismissed as a matter of law, on qualified immunity grounds.

As the Supreme Court has held, "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *see, e.g.*, *Turkmen v. Hasty*, 789 F.3d 218, 246 (2d Cir. 2015).  And, as this Court has noted, because it "reflects 'an *immunity from suit* rather than a mere defense to liability,'" *Randle v. Alexander*, 960 F. Supp. 2d 457, 471 (S.D.N.Y. 2013) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 552 (1985)) (emphasis in original), "it is appropriate to decide the issue of qualified immunity, when raised, at an early stage of the litigation, such as when deciding a pre-

---

against CUNY in the Second Amended Complaint were dismissed with prejudice, and CUNY was terminated as a party in this action.  (*Id.*)

[13] While Plaintiff does not specifically reference the Equal Protection Clause in his pleadings, given his assertions that he was "discriminated against . . . because of his race" and "retaliated against for complaining of . . . race discrimination," and his specific reference to the Fourteenth Amendment (*id.* ¶¶ 7, 35-37), that is the only constitutional provision he could possibly be attempting to rely on here, as to both his retaliation claims and his discrimination claims. To the extent Plaintiff may be attempting to assert a claim here directly under the Fourteenth Amendment, and not through § 1983 or § 1985, he is precluded from doing so.  *See, e.g.*, *Sank v. City Univ. of N.Y.*, No. 10 Civ. 4975 (RWS), 2011 WL 5120668, at *6 (S.D.N.Y. Oct. 28, 2011) ("Because 42 U.S.C. § 1983 . . . provides a remedy for alleged constitutional violations, [plaintiff] cannot base claims directly on the First, Fourth and Fourteenth Amendments.").

answer motion to dismiss." *Id.*; *accord, e.g.*, *Betts v. Sherman*, No. 12 Civ. 3195 (JPO), 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013), *aff'd*, 751 F.3d 78 (2d Cir. 2014).

Here, because the right to be free from retaliation under the Equal Protection Clause was not clearly established in the Second Circuit at the time of any of the alleged retaliatory conduct by Defendants (which, under the allegations in the Second Amended Complaint, occurred in late 2012 and, at the very latest, in February 2013, *see supra* pp. 3-6), Plaintiff's § 1983 and § 1985 retaliation claims in this action, against each of the Defendants, are barred by qualified immunity. They thus should be dismissed on that basis pursuant to Rule 12(b)(6).

The Second Circuit's recent decision in *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d Cir. 2015), compels such a result. In *Vega*, the Second Circuit held that "a state employee may bring a retaliation claim under § 1983 against a supervisor who, acting under color of state law, retaliates against him for opposing discrimination in the terms of his employment." *Id.* at 82. But, as the court acknowledged, the existing law on this question was far from clear. *Id.* at 80-81. To the contrary, at the time of its decision in September 2015, the *Vega* court noted, there was "considerable confusion" in this Circuit as to whether a retaliation claim existed under the Equal Protection Clause. *Id.* at 80. As the Second Circuit recognized, its earlier decisions had, at best, "sent conflicting signals in this respect." *Id.* at 81 (citing, *inter alia*, *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996), and *Hicks v. Baines*, 593 F.3d 159, 171 (2d Cir. 2010)).

Indeed, as recently as August of this year, just a month prior to its decision in *Vega*, the Second Circuit stated unequivocally that "[t]he Equal Protection Clause does not protect against retaliation due to complaints of racial discrimination." *Littlejohn v. City of New York*, 795 F.3d 297, 315 n.14 (2d Cir. 2015). And, in August of last year, this Court itself noted, without

qualification, that the Equal Protection Clause does not confer a cause of action for retaliation. *Hagan v. City of New York*, 39 F. Supp. 3d 481, 504 (S.D.N.Y. 2014). Thus, it was not until *Vega* was decided, barely three months ago, that the Second Circuit "clarif[ied]" for courts in this Circuit, for the first time, that a retaliation claim under the Equal Protection Clause is actionable. 801 F.3d at 80-82.

Under these circumstances, qualified immunity applies to bar Plaintiff's retaliation claims. Two recent decisions from district courts in this Circuit are directly on point. In both, *Siani v. State University of New York at Farmingdale*, 7 F. Supp. 3d 304 (E.D.N.Y. 2014), and *Corrado v. New York State Unified Court System*, No. CV 2012-1748 (DLI) (MDG), 2014 WL 4626234 (E.D.N.Y. Sept. 15, 2014), the courts reviewed the relevant case law in this Circuit (including, most notably the *Bernheim*, 79 F.3d at 323, and *Hicks*, 593 F.3d at 171, decisions discussed by the Second Circuit in *Vega*, 801 F.3d at 81) and concluded that, at the relevant time in question, "the right to be free from retaliation under the Equal Protection Clause [wa]s not clearly established, barring (under the doctrine of qualified immunity) the individual § 1983 retaliation claims." *Siani*, 7 F. Supp. 3d at 319; *Corrado*, 2014 WL 4626234, at *9 n.4.[14] Courts in other Circuits facing similar questions have held likewise. *See, e.g.*, *Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1237 (8th Cir. 2013) ("Because no established right exists under the equal protection clause to be free from retaliation, we reverse the district court's denial of qualified immunity on [plaintiff's] equal-protection retaliation claim." (internal quotation marks and citation omitted)); *Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 340 (11th Cir. 1995) (holding that "[t]he

---

[14] While, after *Vega*, the right to be free from retaliation under the Equal Protection Clause now is a clearly established one, that does not change the proper qualified-immunity analysis here. As discussed above, *Vega* only further confirms that "at the time of the challenged conduct," *Reichle*, 132 S. Ct. at 2093, *i.e.*, in late 2012 and early 2013, whether such a right existed was, at best, "unresolved" in the Second Circuit, *Vega*, 801 F.3d at 81(internal quotation marks and citations omitted), and certainly not clearly established.

right to be free from retaliation is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation," and thus dismissing plaintiff's § 1983 equal-protection retaliation claim on qualified immunity grounds).  So too in this case.

In sum, because the right to be free from retaliation under the Equal Protection Clause was not "'defined with reasonable clarity' by a court with binding authority at the time of the incident in question here," *Roland v. McMonagle*, No. 12 Civ. 6331 (JPO), 2015 WL 5918179, at *6 (S.D.N.Y. Oct. 9, 2015) (citation omitted), Plaintiff's retaliation claims are precluded as a matter of law on qualified immunity grounds.  *See id.*; *see also, e.g.*, *Reichle*, 132 S. Ct. at 2096 (noting that "[i]f judges . . . disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy" (internal quotation marks and citation omitted)).  Accordingly, for that reason alone, they should be dismissed, as to each of the Defendants, with prejudice.

<u>POINT II</u>
<u>PLAINTIFF HAS FAILED TO STATE A CLAIM OF DISCRIMINATION</u>

Plaintiff's § 1983 and § 1985 employment discrimination claims against Defendants also fail as a matter of law.  The Second Amended Complaint is simply devoid of facts plausibly alleging that any adverse employment action suffered here by Plaintiff "was motivated by discriminatory intent."  *Littlejohn*, 795 F.3d at 311 (holding that, on a Title VII or § 1983 discrimination claim, "what must be plausibly supported by the facts alleged in the complaint is that the plaintiff," *inter alia*, "has at least minimal support for the proposition that the employer was motivated by discriminatory intent").  Dismissal here is thus fully warranted.

As the Second Circuit has made clear, "[t]he *sine qua non*" of any employment discrimination claim "is that the discrimination must be *because of*" the employee's protected

characteristic. *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (internal quotation marks omitted) (emphasis in original); *see, e.g.*, *Vega*, 801 F.3d at 85-89.  To avoid dismissal on pleading grounds under this standard, a plaintiff cannot rely on conclusory statements and unsupported assertions.  *See Littlejohn*, 795 F.3d at 310.  Instead, he must make non-conclusory factual allegations sufficient to support a plausible inference that he was subjected to an adverse action "*because of*" his race or other protected characteristic.  *Vega*, 801 F.3d at 85-89; *see, e.g.*, *Sanders v. Grenadier Realty*, 367 F. App'x 173, 175 (2d Cir. 2010) (affirming dismissal "because plaintiffs do not allege any facts supporting an inference of racial animus").

Here, Plaintiff's conclusory assertions of race discrimination are completely unsupported by "any factual circumstances from which a [discriminatory] motivation for [any adverse employment] action [by any of the Defendants] might be inferred."  *Patane*, 508 F.3d at 112; *see, e.g.*, *Littlejohn*, 795 F.3d at 312.  The Second Amended Complaint "does not, for instance, allege that [any Defendant] made any remarks that could be viewed as reflecting discriminatory animus."  *Patane*, 508 F.3d at 112; *see, e.g.*, *Littlejohn*, 795 F.3d at 312; *Rolle v. Educ. Bus Transp., Inc.*, No. 11-cv-3855 (SJF) (AKT), 2013 WL 783026, at *11 (E.D.N.Y. Feb. 12, 2013) (dismissing Title VII race discrimination claim where plaintiff failed to point to "discriminatory remarks" by defendant), *adopted by* 2013 WL 783011 (E.D.N.Y. Feb. 27, 2013).  Nor does it set forth any non-conclusory, factual allegations that similarly situated, non-African-American employees were given "preferential treatment" when compared to Plaintiff."  *Littlejohn*, 508 F.3d at 112.

To be sure, Plaintiff baldly asserts that "the scholarship and academic standards applied to [his] tenure application were far different than the scholarship and academic applied to [his] white peers," that "[w]hite Professors were routinely granted tenure with the same academic and

scholarships credentials possessed by [Plaintiff]," and that this was all "a part of systemic discrimination at the College against African American employees."  (SAC ¶¶ 8, 25-26.)  But such conclusory assertions, without factual allegations to support them, cannot state a plausible claim for employment discrimination.  *See, e.g.*, *Sanders*, 367 F. App'x at 175; *Rolle*, 2013 WL 783026, at *12 (dismissing employment discrimination action despite "Plaintiff's broad statements" in the complaint "regarding the preferential treatment of Caucasian drivers as compared to African-American drivers" because it lacked "the necessary factual content"); *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 533 (S.D.N.Y. 2013) (dismissing race discrimination claim where plaintiff "makes the assertion that BMCC professors 'intentionally treated all white males . . . in an adverse manner by maliciously downgrading their exams,'" but failed to allege any supporting facts).

Indeed, where, as here, "a plaintiff seeks to derive an inference of discrimination from allegations of disparate treatment, he or she must plausibly allege the existence of at least one comparator who was more favorably treated despite being 'similarly situated to the plaintiff in all material respects.'"  *Thompson v. New York City*, No. 12 Civ. 8034 (PAE), 2013 WL 6409326, at *8 (S.D.N.Y. Dec. 9, 2013); *see, e.g.*, *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (dismissing race-based employment discrimination claim asserting only, "[w]ithout factual amplification, the generic allegation of disparate treatment"); *Allessi v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F. Supp. 3d 221, 227-28 (W.D.N.Y. 2014) (dismissing employment discrimination claim where plaintiff failed to provide examples of any similarly situated employees being treated differently).  Plaintiff does not come close to meeting that requirement.

14

On the contrary, what Plaintiff offers in the Second Amended Complaint are, at best, "'conclusory allegations of disparate treatment' and 'personal opinion that such treatment was motivated by discriminatory intent.'" *Gaddy v. Waterfront Comm'n*, No. 13 Civ. 3322 (AT)(HBP), 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014). That does not create, or even support, any plausible inference of race discrimination here. *See, e.g.*, *id.*; *Sanders*, 367 F. App'x at 175.

Moreover, with respect to President Travis, Plaintiff does not even conclusorily allege the requisite racially discriminatory intent. Instead, Plaintiff appears to be attempting to impute to President Travis the purported (though insufficiently alleged) "race discrimination" of defendants Hoffman and Hamilton. (SAC ¶ 20; *see id.* ¶¶ 19-24, 31, 36.) But that does not suffice. The law is clear that, even if it were adequately alleged here (which it is not), the alleged discrimination of lower-level employee defendants such as Hoffman and Hamilton is not enough to impose individual liability on a higher-level decision maker like President Travis. *See, e.g.*, *Siani*, 7 F. Supp. 3d at 327-28 (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 126 (2d Cir. 2004)); *see also Littlejohn*, 795 F.3d at 314. Thus, for this independent reason as well, Plaintiff's discrimination claims against President Travis are subject to dismissal.

And, along with all of the other reasons discussed herein, Plaintiff's discrimination claims against Hoffman and Hamilton also fail on independently sufficient grounds, because he has failed to adequately allege causation. As noted, *see supra* pp. 3-5, and as Plaintiff's allegations in the Second Amended Complaint acknowledge, defendants Hoffman and Hamilton did not make the decision to deny Plaintiff reappointment and tenure that is at issue in this case. (SAC ¶¶ 21-22; *see* Taylor Decl. Exs. E-I.) Upon independent review, that was ultimately the decision of President Travis. (*See* Taylor Decl. Ex. I.) All Plaintiff vaguely states in his

pleading is that defendants Hoffman and Hamilton "presided over" and "substantially influenced" that decision.  (SAC ¶ 24.)  Such conclusory allegations, without any factual explication to support them, do not come close to plausibly alleging the "proximate cause" needed to sustain Plaintiff's individual discrimination claims against these two defendants.  *See, e.g.*, *Burhans v. Lopez*, 24 F. Supp. 3d 375, 383 (S.D.N.Y. 2014) (noting that plaintiffs' "mere conclusory assertions that [defendant] caused their rights to be violated," without allegations of "specific factual details such as names, dates, and events to support their claims," was not enough to allege the proximate cause required for a viable § 1983 discrimination claim); *see also, e.g.*, *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1998) (dismissing § 1983 claim pursuant to Rule 12(b)(6) where plaintiff's allegations did not adequately allege that defendants proximately caused plaintiff's injury).  It provides another, additional basis for dismissal.

Accordingly, for all these reasons, Plaintiff's race-based employment discrimination claims against each of the three named Defendants should be dismissed as a matter of law.[15]

## POINT III
## PLAINTIFF HAS FAILED TO STATE A CLAIM OF RETALIATION

Though such claims are precluded in this action on qualified immunity grounds, *see supra* Point I, even if they were not, Plaintiff's retaliation claims against Defendants would also

---

[15] To the extent Plaintiff is attempting to raise a hostile work environment claim, that, too fails on pleading grounds.  This is so for the reasons just discussed.  *See, e.g.*, *Pearson v. Bd. of Educ.*, 499 F. Supp. 2d 575, 592 (S.D.N.Y. 2007) (noting that "a hostile work environment claim . . . requires a showing that the conduct occurred because of plaintiff's membership in a protected class").  And it is also so because, aside from a single, conclusory assertion that Plaintiff "was subjected to constant harassment by the Department's Chairs" (SAC ¶ 17), the Second Amended Complaint is utterly devoid of allegations of workplace misconduct by any of the Defendants, let alone the sort of "severe or pervasive" misconduct that, even if proved, would rise to the level of a hostile work environment.  *Littlejohn*, 795 F.3d at 321; *see, e.g.*, *Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671 (JPO), 2013 WL 2358596, at *10 (S.D.N.Y. May 30, 2013) (dismissing hostile work environment claim where plaintiff's "allegations do not plausibly point to a work environment that is sufficiently abusive to constitute a hostile workplace").

fail here because he does not plausibly allege that he was retaliated against for complaining of race discrimination.

As the Second Circuit recently held, "the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII." *Vega*, 801 F.3d at 91. Thus, it is now clear that to state a § 1983 equal-protection retaliation claim, a plaintiff must plausibly allege: "(1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action." *Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010) (citation omitted); *see, e.g.*, *Littlejohn*, 795 F.3d at 315-16. Plaintiff cannot satisfy the "protected activity" and "causal connection" requirements as to any of the three Defendants.

*First*, in order for any previous complaint by Plaintiff to qualify as "protected activity," he must have had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks and citation omitted). Although Plaintiff alleges that he "requested the College counsel to investigate" charges of "race discrimination taken against him" by Hoffman and Hamilton (*see* SAC ¶ 20), the Second Amended Complaint is otherwise devoid of any facts regarding this alleged discrimination or Plaintiff's charges. Thus, there is simply nothing in the Second Amended Complaint that would allow a plausible inference that Plaintiff's accusations were based on a reasonable belief that he had been subjected to discrimination. *See, e.g.*, *Williams v. Time Warner Inc.*, 440 F. App'x 7, 10 (2d Cir. 2011) (affirming dismissal of retaliation claim where plaintiff's "complaint merely provides a list of allegations of mistreatment by her employer and suggests the weakest of reasons that she

believed her rights had been violated").

Nor does the Second Amended Complaint anywhere allege that the Defendants were aware of Plaintiff's race discrimination charges (which, as noted, are alleged to have been made not to any of them but to "the College counsel" (SAC ¶ 20)). That, too, provides sufficient grounds for dismissal of Plaintiff's retaliation claims as against each of them. *See, e.g.*, *Callahan v. Consol. Edison Co. N.Y., Inc.*, 187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002) (granting motion to dismiss § 1981 retaliation claim because the plaintiff failed to allege that the individual defendant "had any actual or constructive knowledge of [the plaintiff's] complaints to . . . management").[16]

*Second*, Plaintiff does not plausibly allege a causal connection between his complaint and any adverse actions. It is not enough for Plaintiff merely to assert that he made a complaint and was then subjected to an adverse action. Instead, he must set forth non-conclusory factual allegations sufficient to allow the plausible inference that he was subjected to the adverse action *because of* his complaint. *See Vega*, 801 F.3d at 90-91; *Littlejohn*, 795 F.3d at 316, 319-20. Here, however, Plaintiff does not asserts that things markedly changed after his discrimination complaint, but rather alleges "constant harassment" and "systemic discrimination" starting before and continuing after the complaint, ultimately culminating in his nonreappointment at the end of the 2012-2013 academic year. (SAC ¶¶ 7-8, 17-18.) As the Second Circuit has held, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *see,*

---

[16] And, notably, Plaintiff does not even allege that he brought charges of race discrimination against him by President Travis. (SAC ¶ 20); *see, e.g.*, *Hare v. Hayden*, No. 09 Civ. 3135 (RWS), 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.").

*e.g.*, *Báez v. New York*, --- F. App'x ----, 2015 WL 6642971, at *2 (2d Cir. Nov. 2, 2015); *Floyd v. S. Westchester BOCES*, No. 14 CV 5842 (VB), 2015 WL 5459992, at *9 (S.D.N.Y. July 31, 2015).  And even if the denial of tenure was considered the only relevant adverse action here, the over two-month interval between Plaintiff's alleged internal complaint and that tenure denial, *see supra* pp. 3-6, is too great to support any claim of retaliation.  *See, e.g.*, *Erasmus v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *12 (S.D.N.Y. Nov. 30, 2015) (noting that "courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation" (internal quotation marks and citations omitted)).[17]

Accordingly, if they were not already barred by qualified immunity, *see supra* Point I, Plaintiff's retaliation claims would also be subject to dismissal here for failure to assert a plausible cause of action.

## POINT IV

### PLAINTIFF'S ALLEGED CLAIMS UNDER THE NEW YORK STATE CONSTITUTION ALSO FAIL

Plaintiff also asserts claims against the Defendants, in Count Two of the Second Amended Complaint, under the New York State Constitution.  (SAC ¶¶ 38-39.)  These claims also fail, and should be dismissed as a matter of law, under Rule 12(b)(6).

The analysis here is a simple and straightforward one.  While the New York Court of Appeals has recognized a private right of action for certain violations of the state constitution, such claims are limited to circumstances in which no alternative remedy is available to the plaintiff.  *See, e.g.*, *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 83 (2001); *Lyles v. State*, 2

---

[17] Plaintiff's failure to allege proximate cause with respect to his discrimination claims against defendants Hoffman and Hamilton, *see supra* pp. 15-16, applies equally to, and thus provides yet another basis for dismissal, of his retaliation claims against them.

A.D.3d 694, 695 (2d Dep't 2003), *aff'd*, 3 N.Y.3d 396 (2004); *Hershey v. Goldstein*, 938 F.

Supp. 2d 491, 520 (S.D.N.Y. 2013).  That is not this case, as Plaintiff has already had the

opportunity to assert claims relating to the same factual allegations set forth in the proposed

Second Amended Complaint under the New York State Human Rights Law, N.Y. Exec. Law §

290 *et seq.* (the "NYSHRL") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

*seq*. (both of which were rejected at the administrative agency level and would now be barred if

brought in this Court), and he continues to allege claims, albeit nonviable ones, under §§ 1983

and 1985.  *See, e.g.*, *Hershey*, 938 F. Supp. 2d at 520 (dismissing plaintiff's state constitutional

claims where he alleges duplicative claims under § 1983); *Muhammad* v. *N.Y.C. Transit Auth.*,

450 F. Supp. 2d 198, 210-12 (E.D.N.Y. 2006) (no constitutional tort under the New York State

Constitution recognized where alternative avenue for redressing the alleged religion-based

employment discrimination existed in the NYSHRL).

      And, in any event, as these alleged state constitutional claims are entirely duplicative of

Plaintiff's alleged federal claims, they would fail here on the merits for the very same reasons his

§ 1983 and § 1985 claims are subject to dismissal. Points I-III, *supra*; Point V, *infra*; *see, e.g.*,

*Guan N. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 4299 (AJN), 2013 WL 67604, at *20 (S.D.N.Y.

Jan. 7, 2013) (dismissing plaintiff's "due process and equal protection claims under the New

York . . . for the same reasons that her federal due process and equal protection claims are

dismissed"); *Dotson v. Farrugia*, No. 11 Civ. 1126 (PAE), 2012 WL 996997, at *8 n.3

(S.D.N.Y. Mar. 26, 2012) ("The Equal Protection Clauses of the United States and the New York

Constitutions are coextensive, and therefore an analysis under one equally supports an analysis

under the other.").

## POINT V

### PLAINTIFF'S CLAIMS SHOULD BE
### DISMISSED ON MULTIPLE ADDITIONAL GROUNDS

**A.    Plaintiff's § 1983 and § 1985 Claims Are Barred by Collateral Estoppel**

As noted above, *see supra* p. 6, although he fails to mention it in his pleadings, Plaintiff

previously filed a discrimination complaint against CUNY, relating to the same factual

allegations set forth in the Second Amended Complaint, with the New York State Division of

Human Rights.  (Taylor Decl. Ex. M.)  After a thorough investigation -- including consideration

of the parties' written submissions, review of the relevant evidence and related information, and

interviews of Plaintiff and other witnesses (*see id.* Ex. N) -- the SDHR determined that there was

no probable cause to believe that any CUNY official had engaged or was engaging in unlawful

discrimination against Plaintiff because of his race or unlawful retaliation against him for

complaining of race discrimination.  (*Id.* at 1, 5.)

Under similar circumstances, courts have held that a plaintiff's assertion in a subsequent

judicial proceeding of § 1983 or § 1985 claims "aris[ing] out of the same set of facts" presented

to the SDHR and "premised on defendants' alleged discrimination and retaliation against

[plaintiff]" are precluded on collateral estoppel grounds.  *Sullivan v. N.Y.C. Dep't of

Investigation*, No. 12 Civ. 2564 (TPG), 2014 WL 1244666, at *2-4 (S.D.N.Y. Mar. 26, 2014)

(noting that, under *University of Tennessee v. Elliot*, 478 U.S. 788, 797-98 (1986), "[u]nless the

statute providing the cause of action instructs otherwise, federal courts must give the agency's

fact finding the same preclusive effect to which it would be entitled in the state's courts," and

holding that, under this rule,  plaintiff's § 1983 employment discrimination and retaliation claims

were barred, on a Rule 12(c) motion for judgment on the pleadings, by SDHR's finding that

there was no probable cause to believe that defendants had engaged in unlawful discriminatory

practices); *see, e.g.*, *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 117-18 (2d Cir.

1987) (holding that plaintiff's § 1983 employment discrimination action was precluded where an

earlier determination by the SDHR determined that there was no probable cause to believe that

the plaintiff had been discriminated against, and noting that "[t]he same analysis" would apply to

claims brought under § 1985 and the Fourteenth Amendment).

      As these courts have found, plaintiffs' charges of discrimination brought before the

SDHR were "sufficiently identical" to subsequent § 1983 or § 1985 employment discrimination

claims "for preclusion purposes." *Sullivan*, 2014 WL 1244666, at *4; *see, e.g.*, *DeCintio*, 821

F.2d at 117-18; *Macer v. Bertucci's Corp.*, No. 13-CV-2994 (JFB)(ARL), 2013 WL 6235607, at

*5 (E.D.N.Y. Dec. 3, 2013).  And, because those plaintiffs did not meet their burden of proving

that they "did not have a full and fair opportunity of litigating the issue" before the SDHR,

dismissal on collateral estoppel grounds was fully warranted. *Sullivan*, 2014 WL 1244666, at

*3-4; *see, e.g.*, *DeCintio*, 821 F.2d at 117-18; *Johnson*, 411 F. Supp. 2d at 180-83.  So too here.

      *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 733-36 (2d Cir.

2001), in which the Second Circuit declined to give preclusive effect to a determination of no

probable cause by the SDHR, is not to the contrary.  In both that case and here, to be sure,

plaintiffs were not formally represented by counsel before the SDHR.  (*See* Taylor Decl. Exs. M-

N); *Kosakow*, 274 F.3d at 735.  But in this case, as Plaintiff admitted in a submission to the

EEOC, he consulted with counsel regarding his alleged discrimination and retaliation claims,

and, while no attorney for Plaintiff ever entered an appearance in the SDHR or the EEOC, such

counsel was "observing the process."  (Taylor Decl. Ex. P at 207 (EEOC Intake

Questionnaire).)[18]  And, unlike in *Kosakow*, 274 F.3d at 734, the record reflects that Plaintiff here

---

[18] In any event, a plaintiff's *pro se* status before the SDHR is not dispositive of the subsequent preclusion
inquiry.  *See Macer*, 2013 WL 6235607, at *3, *5-6 (holding that, despite plaintiff's *pro se* status before

submitted extensive documentary evidence to the SDHR, that the SDHR conducted interviews of Plaintiff and other witnesses, and that Plaintiff "was otherwise given a full opportunity to present his case and rebut evidence submitted by [CUNY]." *Johnson*, 411 F. Supp. 2d at 182; (*see* Taylor Decl. Ex. P (SDHR Investigation File)).

Defendants acknowledge that, in its June 29, 2015 Opinion and Order, this Court considered these same arguments, then raised by CUNY, and concluded that it could not resolve the collateral-estoppel question "at the present stage." (Taylor Decl. Ex. B at 7.) But, at that time, the Court did not have before it the full SDHR investigatory file. Now that it does (*see id.* Ex. P), the Court may properly review that full investigatory file in order to determine, at the motion-to-dismiss stage, whether Plaintiff "ha[d] a full and fair opportunity to litigate his claims before the SDHR." *Johnson*, 411 F. Supp. 2d at 178. Defendants submit that this nearly 500-page file, containing voluminous documentary submissions from Plaintiff and referencing several interviews by SDHR investigators of Plaintiff and other witnesses he had identified, conclusively demonstrates that he did. (*See, e.g.*, Taylor Decl. Ex. P, at 41-52 (SDHR Event History with Comments).)

Accordingly, Plaintiff's claims against them in the Second Amended Complaint are precluded by collateral estoppel, as well as on the numerous other grounds for dismissal here, and should be dismissed on that basis pursuant to Rule 12(b)(6).

**B.    Plaintiff's § 1985 Claims Are Also Precluded for Failure to Allege <u>a Conspiracy and Under the Intracorporate Conspiracy Doctrine</u>**

Plaintiff's purported claims under § 1985 are also precluded because the Second Amended Complaint fails to set forth any allegations regarding the existence of a conspiracy.

---

the SDHR, her race discrimination claims, including claims brought under § 1983, were still precluded by the SDHR's prior finding that defendant did not discriminate against plaintiff).

"Mere conclusory allegations that a conspiracy took place, without any factual basis evidencing a 'meeting of the minds' between the defendants, will warrant dismissal of a § 1985 claim." *Bivens v. Schrior*, No. 12-CV-2915 (CBA)(LB), 2012 WL 2872399, at *4 (E.D.N.Y. July 10, 2012); *see Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). The Second Amended Complaint does not contain even that. Furthermore, given that each of the Defendants is a CUNY employee, even if a conspiracy had been alleged, Plaintiff's § 1985 claims would still fail here under the intracorporate conspiracy doctrine. *See, e.g.*, *Lucas v. Meier*, No. 11 Civ. 0872 (ER), 2013 WL 1309622, at *8 (S.D.N.Y. Mar. 30, 2013) (dismissing § 1985 claim "because the alleged conspirators are members of the same public entity" and thus "are legally incapable of conspiring together"); *Burrell v. City Univ. of N.Y.*, 995 F. Supp. 398, 414 (S.D.N.Y. 1998) (dismissing § 1985 claim against CUNY employees under the intracorporate conspiracy doctrine).

C.      **Injunctive Relief Does Not Lie Here Against Defendants**

Finally, as part of the relief requested in this action, Plaintiff seeks "promotion and reinstatement of tenure status . . . within the University system." (SAC at 6.) Because Defendants have been sued here only in their individual capacities, however, such an injunctive remedy is plainly unavailable. (*Id.* at 2); *see, e.g., Rockland Vending Corp. v. Creen*, No. 07-CV-6268 (KMK), 2009 WL 2407658, at *1 n.2 (S.D.N.Y. Aug. 4, 2009) (holding that injunctive relief "is unavailable in this action, as Plaintiffs have brought suit against Defendants only in their individual capacities"); *Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011) ("Plaintiffs cannot obtain prospective injunctive relief from the Defendants sued in their individual capacities as such Defendants would not have the authority to provide such relief in their individual capacities."). Accordingly, for this reason, too, Plaintiff's claims for such relief should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion should be granted and the Second

Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
        December 18, 2015

Eric T. Schneiderman
Attorney General of the State of New York
*Attorney for Defendants*

By:


/s/ *William J. Taylor, Jr.*
William J. Taylor, Jr.
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov
