UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHRISTOPHER WARBURTON,                    :
                               Plaintiff,   :
                                            :
        -v-                                 :
                                            :          14-CV-9170 (JPO)
JOHN JAY COLLEGE OF CRIMINAL               :
JUSTICE OF THE CITY UNIVERSITY OF          :          OPINION AND ORDER
NEW YORK, JOAN HOFFMAN in her              :
individual capacity, JAY HAMILTON in his   :
individual capacity, and JEREMY TRAVIS in his :
individual capacity,                        :
                               Defendants.  X
-------------------------------------------------------------

J. PAUL OETKEN, District Judge:

        Plaintiff Christopher Warburton brings this action under 42 U.S.C. §§ 1983 and 1985 and

the New York State Constitution, alleging that defendants Jay Hamilton, Joan Hoffman, and

Jeremy Travis (collectively, "Defendants")[1] discriminated against him on the basis of his race

and retaliated against him for complaining about race discrimination.  (Dkt. No. 25.)  Defendants

now move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  (Dkt. No. 34.)  For the reasons that follow, the motion to dismiss is granted.

**I.      Background**

        The following facts are drawn from the Second Amended Complaint and are presumed

true for the purpose of this motion.

---

[1] The Second Amended Complaint also names John Jay College of Criminal Justice ("John Jay")
as a Defendant.  (Dkt. No. 25.)  However, John Jay is not an entity that can be sued; its parent the
City University of New York ("CUNY") is.  *See Clissuras v. City Univ. of New York*, 359 F.3d
79, 81 n.2 (2d Cir. 2004) (per curiam) (holding that CUNY "is a separate corporate body" under
New York law, and that the colleges of which CUNY is composed "do[] not appear to be . . .
legally cognizable entit[ies] apart from CUNY").  In its June 29, 2015, Opinion and Order, the
Court dismissed Warburton's claims against CUNY.  (Dkt. No. 24.)  Warburton has
subsequently acknowledged that the inclusion of CUNY as a Defendant in the Second Amended
Complaint, filed after the Court's June 29, 2015, Opinion and Order, was in error.  (Dkt. No. 27.)

Warburton, who is African American, was an assistant professor in the Economics

Department (the "Department") at John Jay College of Criminal Justice ("John Jay") from 2006

to 2012.  (Dkt. No. 25 ¶¶ 1, 9, 22.)  At some point during his time at John Jay, Warburton was a

member of the Department's hiring committee.  (*Id.* ¶ 14.)  After he "became concerned that the

search committee was making race[-]influenced hiring decisions," he resigned his membership

on the committee.  (*Id.* ¶¶ 15-16.)  As the only African American faculty member in the

Department, Warburton was "subjected to constant harassment by the Department's Chairs."

(*Id.* ¶ 17.)

On October 17, 2011, Warburton's personnel file "disappeared from the Provost's

office."  (*Id.* ¶ 18.)  "While most of the file was re-constituted[,] student evaluations were

permanently lost.  This was significant since student evaluations were uniformly good."  (*Id.*)

On February 21, 2012, Warburton applied for reappointment "with tenure and

promotion."  (*Id.* ¶ 19.)  On September 10, 2012, he "requested the College counsel to

investigate the race discrimination taken against him by Joan Hoffman, the Department's former

Chair, and Jay Hamilton, the Department's current Chair."  (*Id.* ¶ 20.)  On November 6, 2012,

Warburton received notice that the Tenure Review Subcommittee of the Faculty Personnel

Committee had approved him for reappointment with tenure.  (*Id.* ¶ 21)  But on November 20,

2012, Warburton received a letter from Jeremy Travis, the President of John Jay, saying that the

Committee's decision had been reversed.  (*Id.* ¶ 22.)

Both Hoffman and Hamilton "presided over tenure and promotion decisions relating to

Dr. Warbuton, even though they were at the time under investigation in connection with

discrimination allegations" made by Warburton.  (*Id.* ¶ 23.)  Warburton alleges that Hoffman and

Hamilton "substantially influenced the decision to deny" Warburton tenure.  (*Id.* ¶ 24.)  The

reasons provided for denial "never justified denial of tenure" to his "white peers."  (*Id.* ¶ 25.)

Moreover, "the scholarship and academic standards" applied to his application "were far different" than those applied to his white peers.  (*Id.* ¶ 26.)  Finally, "[i]mportant evidence of Dr. Warburton's scholarship somehow disappeared from his personnel file" without explanation.  (*Id.* ¶ 29.)

Warburton initiated this suit in New York State Supreme Court, New York County, alleging a violation of 42 U.S.C. § 1981.  (Dkt. No. 1.)  Defendant the City University of New York (CUNY) removed the action to this Court under 28 U.S.C. § 1441(a).  (*Id.*)  Warburton then filed the Amended Complaint, which removed the § 1981 cause of action and added claims under §§ 1983 and 1985.  (Dkt. No. 7.)  CUNY moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 10.)  On June 29, 2015, the Court granted CUNY's motion to dismiss and granted Warburton leave to amend the Amended Complaint to add allegations against individual defendants at CUNY.  (Dkt. No. 24.)

Thereafter, Warburton filed the Second Amended Complaint against Defendants.  (Dkt. No. 25.)  Defendants now move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 34.)

## II.    Discussion

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in the plaintiff's favor."  *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks omitted).

A.        **Qualified Immunity**

Defendants assert that Warburton's retaliation claims, brought under § 1983 and § 1985 for retaliation in violation of the Equal Protect Clause of the Fourteenth Amendment, should be dismissed because Defendants are entitled to qualified immunity.  (Dkt. No. 34 at 9-12.)

The doctrine of qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *Lynch v. Ackley*, 811 F.3d 569, 578 (2d Cir. 2016).  "This is so even if the court would conclude that, under law at the later time of the court's ruling, the defendant's conduct would be found to violate the Constitution."  *Lynch*, 811 F.3d at 578.  In this way, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate" at the time of the challenged conduct.  *Id.* at 741.

Defendants are entitled to qualified immunity against Warburton's retaliation claims because at the time of challenged conduct—2012 and earlier, according to the Second Amended Complaint—the right to be free from retaliation under the Equal Protection Clause was not clearly established in this Circuit.  (Dkt. No. 34 at 9-12.)  In *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 80 (2d Cir. 2015), the Second Circuit held that "retaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983."  However, the Second Circuit acknowledged that at the time of its decision there was "considerable confusion surrounding the viability of retaliation claims under § 1983" and the Circuit had previously "sent conflicting signals in this respect."  *Id.* at 80-81.  *Compare Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("[W]e know of no court that has recognized a

claim under the equal protection clause for retaliation following complaints of racial

discrimination . . . . [and] we see no reason to break new constitutional ground in this case."),

*and Littlejohn v. City of New York*, 795 F.3d 297, 315 n.14 (2d Cir. 2015) ("The Equal Protection

Clause does not protect against retaliation due to complaints of racial discrimination." (citing

*Bernheim*, 79 F.3d at 323)), *with Hicks v. Baines*, 593 F.3d 159, 171 (2d Cir. 2010) (rejecting

defendant's argument "that plaintiffs' § 1983 claim alleging a violation of the Equal Protect

Clause of the Fourteenth Amendment should be dismissed . . . ." where "[t]he premise of this

lawsuit is that plaintiffs were treated differently—that is, they suffered retaliation—on the basis

of their participation in discrimination investigations and proceedings.").

Because the Second Circuit expressed conflicting views on whether the Equal Protection

Clause protects against retaliation due to complaints of racial discrimination before its 2015

decision in *Vega*, and the conduct at issue in this case occurred no later than 2012, it cannot be

said that "the law was 'defined with reasonable clarity' by a court with binding authority at the

time of the incident in question."  *Roland v. McMonagle*, 12-CV-6331, 2015 WL 5918179, at *7

(S.D.N.Y. Oct. 9, 2015) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir.

2013)).  Indeed, "if judges . . . disagree on a constitutional question, it is unfair to subject

[government officials] to money damages for picking the losing side of the controversy."

*Reichle*, 132 S. Ct. at 2096 (citation and alteration omitted).  Accordingly, Defendants are

entitled to qualified immunity on Warburton's retaliation claims.

### B.    Discrimination

Defendants also assert that Warburton's discrimination claims, brought under § 1983 and

§ 1985, should be dismissed for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).

"[P]ublic employees aggrieved by discrimination in the terms of their employment may

bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state

law." *Vega*, 801 F.3d at 87 (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d

107, 122-23 (2d Cir. 2004)).  "To state a claim under § 1983, a plaintiff must allege [1] the

violation of a right secured by the Constitution and laws of the United States, and must show [2]

that the alleged deprivation was committed by a person acting under color of state law."  *West v.*

*Atkins*, 487 U.S. 42, 48 (1988).  Once action under color of state law is established, an Equal

Protection discrimination claim under § 1983 is considered using the familiar burden-shifting

framework utilized in the context of Title VII, and the elements of such a claim are the same as

under a parallel Title VII discrimination suit.  *Vega,* 801 F.3d at 88; *Ruiz v. Cty. of Rockland*, 609

F.3d 486, 491 (2d Cir. 2010); *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).

Accordingly, a plaintiff stating a discrimination claim under § 1983 can survive dismissal

if she can show: "(1) that she is a member of a protected class, (2) that she was qualified for the

position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a

*minimal* burden of showing facts suggesting an inference of discriminatory motivation."

*Littlejohn*, 795 F.3d at 311.  At the initial pleading stage, Warburton need only plead facts that

"give plausible support to a *minimal* inference of discriminatory motivation."  *Littlejohn*, 795

F.3d at 311 (emphasis added); *see Vega*, 801 F.3d at 87.  To that end, a "showing of disparate

treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly

situated employee outside his protected group'—is a recognized method of raising an inference

of discrimination for purposes of making out a *prima facie* case."  *Mandell v. Cty. of Suffolk*, 316

F.3d 368, 379 (2d Cir. 2003).

Defendants contend that Warburton has failed to sufficiently allege the elements of a

*prima facie* discrimination claim because the Second Amended Complaint is "devoid of facts

plausibly alleging that any adverse employment action suffered . . . 'was motivated by

discriminatory intent.'"  (Dkt. No. 34 at 12-16 (quoting *Littlejohn*, 795 F.3d at 311).)  Warburton

makes the following factual allegations in support of his claim that his denial of tenure was motivated by discriminatory intent.  First, he alleges that "[a]s the only African American member of the Department's faculty" he was "subjected to constant harassment by the Department's Chairs."  (Dkt. No. 25 ¶ 17.)  The requisite discriminatory intent cannot be inferred from this conclusory allegation, unsupported by any specific factual detail.  Warburton also alleges that "the reasons provided by Defendant for denial" of tenure, "never justified the denial of tenure to his white peers."[2]  Specifically, he states that the "the scholarship and academic standards" applied to his application were "far different than the scholarship and academic standards applied" to his "white peers" and that his white peers were "routinely granted tenure with the same academic and scholarship credentials possessed by" Warburton.  (*Id.* ¶¶ 25-27.) Aside from these general allegations, Warburton does not provide any additional factual basis for his claim that he was treated differently from similarly situated white peers.

Because his claim of disparate treatment is devoid of supporting factual allegations, Warburton fails to raise even the minimal inference of discriminatory intent needed to survive a motion to dismiss.  "'A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably,' but '[i]n order to make such a showing, the plaintiff must compare herself to employees who are similarly situated in all material respects.'"  *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (quoting *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)).  Courts regularly dismiss discrimination claims premised on disparate treatment where, as here, plaintiffs fail to make factual allegations sufficient to raise a plausible inference

---

[2] It is not clear to whom Warburton is referring when he alleges that "Defendant" provided "specious" reasons for his denial of tenure, as the Second Amended Complaint names multiple Defendants.  (Dkt. No. 25 ¶ 25.)

of discrimination.  *See, e.g., Johnson v. Andy Frain Servs., Inc.*, No. 15-1143, 2016 WL 210098, at *2 (2d Cir. Jan. 19, 2016) (per curiam); *Yan v. Ziba Mode Inc.*, No. 15-CV-47, 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) ("[W]hile Plaintiff alleges" that "white employees" were not similarly treated, "the Amended Complaint is otherwise silent as to these comparators and fails to plead any facts regarding how these employees' identities, experience levels, and conduct compared to [p]laintiff's."); *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 319 (S.D.N.Y. 2014) ("[A]lthough, [a]t the motion to dismiss stage . . . evidence [of similarly situated comparators] is not necessary[,] . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." (citation and internal quotation marks omitted)); *Henry*, 18 F. Supp. 3d at 409 (dismissing a disparate treatment claim where plaintiff failed "to identify, let alone describe, any purported comparator"); *Thompson v. New York City*, 12-CV-8043, 2013 WL 6409326, at *8 (S.D.N.Y. Dec. 9, 2013); *see also Lopez v. Advantage Plumbing & Mech. Corp.*, No. 15-CV-4507, 2016 WL 1268274, at *3-4 (S.D.N.Y. Mar. 31, 2016).

Absent from the Second Amended Complaint is any detail about Warburton's white peers, their academic and scholarship credentials, when they were granted tenure, or how the standards applied to Warburton's application differed from those applied to his white peers. Although not all of these factual allegations would be necessary to support a claim of disparate treatment, there is an absence of any factual basis in the Second Amended Complaint upon which to assess the plausibility of Warburton's claim.  Accordingly, Defendants' motion to dismiss Warburton's discrimination claims is granted.[3]

---

[3] The Second Amended Complaint also states, as its second cause of action, that "[D]efendants have violated the New York State Constitution."  (Dkt. No. 25 ¶ 39.)  However, Plaintiff has not cited any provision in the New York Constitution in either his Second Amended Complaint or in his Opposition to the Motion to Dismiss.  (Dkt. Nos. 25, 39.)  Nor has Warburton cited any case

**III.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of

Court is directed to close the motion at docket number 33 and to close this case.

SO ORDERED.


Dated:  July 7, 2016
        New York, New York


_____
        J. PAUL OETKEN
United States District Judge

---

law in support of his purported claim.  Warburton has thus failed to state any claim for relief
under the New York State Constitution.  The Court will not construct a theory of relief on behalf
of Warburton and his counsel.  Accordingly, any claim under the New York Constitution is
dismissed.